## SCHLEMMER *v.* BUFFALO, ROCHESTER AND PITTS-BURG RAILWAY COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 41. Argued January 18, 21, 1907.—Decided March 4, 1907.

Statements of a witness although based on hearsay constitute evidence in the cause unless seasonably objected to, as hearsay.

The provisions of § 2 of the Safety Appliance Act of March 2, 1893, as amended April 1, 1896, declaring it to be unlawful for any common carrier engaged in interstate commerce to haul or permit to be hauled or used on its line any car used in moving interstate commerce not equipped with couplers coupling automatically by impact, and which can be un-coupled without the necessity of men going between the ends of the cars, relate to all kinds of cars running on the rails, including locomotives and steam shovel cars. *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1.

The object of that statute was to protect the lives and limbs of railroad employés by rendering it unnecessary for men operating the couplers to go between the ends of the cars, and the words "used in moving interstate traffic" occurring therein are not to be taken in a narrow sense.

In a suit based upon the Safety Appliance Act of March 2, 1893, as amended April 1, 1896, the plaintiff is not called upon to negative the proviso of § 6 of said act, either in his pleadings or proofs. Such proviso merely creates an exception and if the defendant wishes to rely thereon the burden is upon it to bring itself within the terms of the exception; those who set up such an exception must establish it.

Where a Federal question is duly raised at the proper time and in a proper manner in the state court and the judgment of the state court neces-

sarily involves the decision of such question this court on writ of error will review such judgment although the state court in its opinion made no reference to the question. And if it is evident that the ruling of the state court purporting to deal only with local law has for its premise or necessary concomitant a cognizable mistake, that may be sufficient to warrant a review.

Assumption of risk as extended to dangerous conditions of machinery, premises and the like, obviously shades into negligence as commonly understood. The difference between the two is one of degree rather than of kind.

Section 8 of the Automatic Coupler Act having exonerated the employé from assumption of risk under specified conditions, the employé's rights in that regard should not be sacrificed by charging him with assumption of risk under another name, for example, with contributory negligence.

In this case the so-called contributory negligence of the deceased employé was so involved with and dependent upon erroneous views of the statute, that the judgment complained of must be reversed.

207 Pa. St. 198, reversed.

THE facts are stated in the opinion.

*Mr. Frederic D. McKenney* and *Mr. Luther M. Walter,* with whom *Mr. Edward A. Moseley* and *Mr. A. J. Truitt* were on the brief, for the plaintiff in error:

The steam shovel which the deceased, in the performance of his duty as a brakeman, was endeavoring to couple up to the caboose was a "car" within the purview of section 2 of the act of March 2, 1893, commonly known as the "Safety Appliance Act." The purpose of that act was to promote the safety of employés and travelers upon railroads; the act is remedial in its character and should be construed so as best to accomplish the intent and purpose of the Congress. *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1; *Kansas City Co.* v. *Crocker,* 11 So. Rep. 262; *Thomas* v. *Railroad Co.,* 38 Georgia, 222; *Perez* v. *San Antonio &c. Ry. Co.,* 28 Texas Civ. App. 255; *Tex. & Pac. Ry.* v. *Webb,* 72 S. W. Rep. 1044.

The steam shovel was en route from Limestone, New York, to a point in Pennsylvania. That the steam shovel was bolted to a platform which was supported on trucks running upon the rails does not militate against the conclusion that its

movement across state lines and from a point in one State to a point in another constituted interstate commerce. Though supported by its own trucks and running on its own wheels it nevertheless was freight and was being transported by defendant in error in pursuance of its general business as a common carrier. *Gibbons* v. *Ogden*, 9 Wh. 1; *Lottery case*, 188 U. S. 321–345; *Peoria & Pekin Union Ry. Co.* v. *C., R. I. & P. Ry. Co.*, 109 Illinois, 135.

Inasmuch as the steam shovel car was within the purview of the statute, it follows that as it was not equipped with an automatic coupler as required by that statute its movement was in violation of law. Section 8 of the act of March 2, 1893, provides that if any employé of a common carrier subject to the act is injured by any car in use contrary to the provision of the act such employé shall not be deemed to have assumed the risk thereby occasioned.

It is our contention that the doctrine of assumption of risk in this case was so inextricably interwoven with the question of supposed contributory negligence on the part of the deceased that the prime matter for adjudication by the state court was the applicability of the Federal statute to the facts disclosed by the evidence. The refusal of the state court to accord to the statute controlling influence constituted, upon the facts and circumstances shown by the evidence, reversible error.

This court has jurisdiction to review judgments of the Supreme Court of a State when a Federal question has been properly raised in and disposed of by that court. Whether a Federal right was sufficiently pleaded and brought to the attention of the state court is itself a Federal question, and the decision of this court on writ of error is not concluded by the view taken by the highest court of the State. *Carter* v. *Texas*, 177 U. S. 442, 447, citing *Neal* v. *Delaware*, 103 U. S. 370, 396–397; *Mitchell* v. *Clark*, 110 U. S. 633, 645; *Boyd* v. *Thayer*, 143 U. S. 135, 180.

Where in this court a party asserts that the final judgment

of the highest court of a State denied to him a right or immunity set up and claimed under the Constitution or laws of the United States and the court finds that a Federal question involving such claim was properly raised below, jurisdiction of this court to review that judgment cannot be defeated by the mere failure or the refusal of the highest court of the State to refer to the question so raised. *Erie R. R. Co.* v. *Purdy,* 185 U. S. 148.

It is immaterial that the state court considered the case to fall within the principles of general law untrammeled by statutory enactments. The grasp of the Federal statute, if any it had, must first have been released before the general law can be given play. The construction, scope, and applicability of the statute invoked to the facts disclosed by the evidence raise Federal questions in respect to which the party who claims under such statute, and whose claim is denied, has a right to invoke the judgment of this court. *Anderson* v. *Carkins,* 135 U. S. 483.

While it is conceded that this court cannot enter upon an inquiry as to whether the finding of a jury in a state court is against the evidence, *Missouri, Kansas & Texas R. R. Co.* v. *Haber,* 169 U. S. 639, nevertheless the question as to the sufficiency, competency, or legal effect of the evidence as bearing upon a question of Federal law raised in the course of the trial to support the conclusion reached by the state court may be reviewed by this court, as the supreme court of error of a State may review the proceedings of inferior courts of original jurisdiction. *Mackey* v. *Dillon,* 4 How. 447; *Dower* v. *Richards,* 151 U. S. 658.

Before accepting this steam shovel car it was the defendant's duty to inspect it and to see that it complied with the statute. *Railroad* v. *Mackey,* 157 U. S. 72; *United States* v. *Southern Ry.,* 135 Fed. Rep. 122.

The proximate cause of the accident in this case was the failure of the defendant company to require the equipment of the car with automatic couplers. *Railroad Co.* v. *Holloway,*

191 U. S. 334; *Elmore* v. *Seaboard Air Line Ry. Co.*, 41 S. E. Rep. 786.

A violation of a statutory obligation by an employer is negligence *per se.* *Union Pac. Ry. Co.* v. *McDonald*, 152 U. S. 262, and cases cited. Contributory negligence will not bar a recovery when the defendant itself has violated a positive requirement of law. *Flint &c. R. Co.* v. *Lull*, 28 Michigan, 510, 515; *The Pennsylvania*, 19 Wall. 125; *Carterville Coal Co.* v. *Abbott*, 181 Illinois, 495; *Kansas City, M. & B. R. R.* v. *Flippo*, 138 Alabama, 487.

The evidence in this case should have been submitted to the jury. It may well be doubted whether there is any evidence of negligence on the part of deceased. It certainly can not be said that all minds, from the evidence, would arrive at the conclusion that deceased had been guilty of negligence causing his own death. The decisions of this court have well settled the law to be that the case must go to the jury wherever there is reasonable ground for ordinary minds to arrive at different conclusions. *Railroad Co.* v. *Stout*, 17 Wall. 657, 663.

The witnesses as to the occurrence of the accident were employés of the defendant in error and in a sense were interested witnesses; therefore the measure of credence to be given their evidence should have been left to the jury. *Texas & Pac. R. Co.* v. *Carlin*, 189 U. S. 354, 361.

The defendant in error by refusing to haul the defective car could have avoided the injury to Schlemmer, and although Schlemmer might have been guilty of ordinary want of care and caution, still the defendant in error was liable, since by using reasonable care and prudence it might have avoided the consequences of plaintiff's negligence. *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408.

From the mere fact of the occurrence of the injury negligence is not to be presumed. *Northern Pac. R. R.* v. *Everett*, 152 U. S. 107.

In the courts of Pennsylvania, as well as those of the United States, the trend of decision in the more recent cases is to the

effect that, except in cases in which both the evidence and all inferences which may be drawn therefrom are all one way, questions of negligence and contributory negligence are for the jury.. *Esher* v. *Mineral R. & Min. Co.*, 28 Pa. Super. Ct. 387; *Kilkeary* v. *Thackery*, 165 Pa. 584; *Hogan* v. *West Mahony Tp. &c. Co.*, 174 Pa. 352; *Fetterman* v. *Rush Twp.*, 28 Pa. Super. Ct. 7.

· · *Mr. M. E. Olmsted,* with whom *Mr. C. H. McCauley* and *Mr. A. C. Stamm* were on the brief, for defendant in error:
. The state court having decided the case upon the ground of contributory negligence, which does not present a Federal question, its judgment would not be reviewable here even though another issue, presenting a Federal question, had been squarely raised.

Even though a Federal question had been squarely raised in the Supreme Court of Pennsylvania, nevertheless, as the defense of contributory negligence was found by that court to be a complete defense, it would have been unnecessary for it to pass upon the Federal question and its failure to do so could not have been assigned as error here. *Adams County* v. *Burlington & Missouri R. R. Co.*, 112 U. S. 123; *Chouteau* v. *Gibson*, 111 U. S. 200; *Murdock* v. *Memphis*, 20 Wall. 590, 636. See also *Jenkins* v. *Loewenthal*, 110 U. S. 222.

Where the Supreme Court of a State decides a Federal question, in rendering a judgment, and also decides against the plaintiff in error on an independent ground not involving a Federal question, and broad enough to maintain the judgment, the writ of error will be dismissed, without considering the Federal question. *Hale* v. *Akers*, 132 U. S. 554; *McManus* v. *O'Sullivan*, 91 U. S. 578; *Brown* v. *Atwell*, 92 U. S. 327; *Citizens' Bank* v. *Board of Liquidation*, 98 U. S. 140; *Chouteau* v. *Gibson*, 111 U. S. 200; *Adams County* v. *Burlington & Missouri Railroad*, 112 U. S. 123; *Detroit City Railway* v. *Guthard*, 114 U. S. 133; *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.*, 125 U. S. 18; *De Saussure* v. *Gaillard*, 127 U. S. 216, 234.

The trial judge having declared that upon plaintiff's own

evidence she was not entitled to recover because of the contributory negligence of the deceased; and the Supreme Court of Pennsylvania having affirmed the judgment upon that ground alone, there is nothing to which the jurisdiction of this court can attach.

Assumption of risk and contributory negligence are separate and distinct defenses. The act of 1893 relates to the former only. It does not take away the latter.

Under the law of Pennsylvania, plaintiff would not be entitled to recover even if the deceased had not been guilty of contributory negligence, because it is the law of that State that an employé assumes the risks incident to the discharge of his duties, even though those duties are hazardous, if he has had an opportunity to ascertain their dangerous character. *Patterson* v. *R. R. Co.*, 76 Pa. St. 389; *Pittsburgh & Connellsville R. R. Co.* v. *Sentmeyer*, 92 Pa. St. 276.

The act of 1893 does not apply to this case at all; but if it did it simply took away from defendant that single ground of defense, namely, the assumption of risk by the employé.

Recovery by a plaintiff is precluded where his or her own negligence has proximately contributed to his or her own injury. *Washington & Georgetown R. R. Co.* v. *McDade*, 135 U. S. 554; 7 Am. & Eng. Enc. of Law, 371; *Sunney* v. *Holt*, 15 Fed. Rep. 880; *Motey* v. *Pickle M. & G. Co.*, 74 Fed. Rep. 155.

Although under the act of 1893, where applicable, an employé will not be deemed to have assumed the risk of the employment, nevertheless he must act in such manner that injury shall not befall him as the result of his own fault or imprudence. The distinction between "assumption of risk" and "contributory negligence" has always been clearly drawn. *C. O. & G. R. R.* v. *McDade*, 191 U. S. 64; *Narramore* v. *Ry. Co.*, 96 Fed. Rep. 298; *St. Louis Cordage Co.* v. *Miller*, 126 Fed. Rep. 495; *Hesse* v. *R. R. Co.*, 58 Ohio St. 167; *Miner* v. *R. R. Co.*, 153 Massachusetts, 398.

The provision in the act of 1893 that no employé of a common carrier, who may be injured by any car in use contrary to

the provisions requiring automatic couplers, shall be deemed
to have assumed the risk occasioned thereby, can have no
effect on the general principle of law that recovery by a plaintiff
is precluded where his own negligence has proximately contrib-
uted to, and, as in this case, caused, his own injury. *Winkler*
v. *Phila. & R. R. R.*, 53 Atl. Rep. 90; *C. C. C. & St. L. Ry. Co.*
v. *Baker*, 91 Fed. Rep. 224; *D. & R. G. R. R. Co.* v. *Arrighi*,
129 Fed. Rep. 347; *Narramore* v. *C. C. C. & St. L. R. R.*, 96
Fed. Rep. 298; *L. E. & W. Ry. Co.* v. *Craig*, 73 Fed. Rep. 642;
*Hodges* v. *Kimball*, 104 Fed. Rep. 745; *Dixon* v. *W. U. Tel. Co.*,
68 Fed. Rep. 630; *Kilpatrick* v. *Grand Trunk Ry. Co.*, 27 Am.
& Eng. R. R. Cases, 945.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action for the death of the plaintiff's intestate,
Adam M. Schlemmer, while trying to couple a shovel car to a
caboose. A nonsuit was directed at the trial and the direction
was sustained by the Supreme Court of the State. The shovel
car was part of a train on its way through Pennsylvania from
a point in New York, and was not equipped with an automatic
coupler in accordance with the act of March 2, 1893, c. 196, § 2,
27 Stat. 531. Instead of such a coupler it had an iron drawbar
fastened underneath the car by a pin and projecting about a
foot beyond the car. This drawbar weighed about eighty
pounds and its free end played up and down. On this end was
an eye, and the coupling had to be done by lifting the free end,
possibly a foot, so that it should enter a slot in an automatic
coupler on the caboose and allow a pin to drop through the eye.
Owing to the absence of buffers on the shovel car and to its
being so high that it would pass over those on the caboose,
the car and caboose would crush any one between them if
they came together and the coupling failed to be made.
Schlemmer was ordered to make the coupling as the train was
slowly approaching the caboose. To do so he had to get be-
tween the cars, keeping below the level of the bottom of the

shovel car. It was dusk and in endeavoring to obey the order and to guide the drawbar he rose a very little too high, and, as he failed to hit the slot, the top of his head was crushed.

The plaintiff in her declaration alleged that the defendant was transporting the shovel car from State to State and that the coupler was not such as was required by existing laws. At the trial special attention was called to the United States statute as part of the plaintiff's case. The court having directed a nonsuit with leave to the plaintiff to move to take it off, a motion was made on the ground, among others, "that under the United States statute, specially pleaded in this case, the decedent was not deemed to have assumed the risk owing to the fact that the car was not equipped with an automatic coupler." The question thus raised was dealt with by the court in overruling the motion. Exceptions were allowed and an appeal taken. Among the errors assigned was one "in holding that the shovel car was not a car used in interstate commerce or any other kind of traffic," the words of the court below. The Supreme Court affirmed the judgment in words that we shall quote. We are of opinion that the plaintiff's rights were saved and that we have jurisdiction of the case, subject to certain matters that we shall discuss.

On the merits there are two lesser questions to be disposed of before we come to the main one. A doubt is suggested whether the shovel car was in course of transportation between points in different States, and also an argument is made that it was not a car within the contemplation of § 2. On the former matter there seems to have been no dispute below. The trial court states the fact as shown by the evidence, and testimony that the car was coming from Limestone, New York, is set forth, which, although based on the report of others, was evidence, at least unless objected to as hearsay. *Damon* v. *Carrol*, 163 Massachusetts, 404, 408, 409. It was the testimony of the defendant's special agent employed to investigate the matter.

The latter question is pretty nearly answered by *Johnson* v.

*Southern Pacific Co.*, 196 U. S. 1, 16. As there observed, "Tested by context, subject matter and object, 'any car' meant all kinds of cars running on the rails, including locomotives." "The object was to protect the lives and limbs of railroad employés by rendering it unnecessary for a man operating the couplers to go between the ends of the cars." These considerations apply to shovel cars as well as to locomotives, and show that the words "used in moving interstate traffic" should not be taken in a narrow sense. The later act of March 2, 1903, c. 976, 37 Stat. 943, enacting that the provision shall be held to apply to all cars and similar vehicles, may be used as an argument on either side, but in our opinion indicates the intent of the original act. 196 U. S. 21. There was an error on this point in the decision below.

A faint suggestion was made that the proviso in § 6 of the act, that nothing in it shall apply to trains composed of four-wheel cars, was not negatived by the plaintiff. The fair inference from the evidence is that this was an unusually large car of the ordinary pattern. But, further, if the defendant wished to rely upon this proviso, the burden was upon it to bring itself within the exception. The word "provided" is used in our legislation for many other purposes beside that of expressing a condition. The only condition expressed by this clause is that four-wheeled cars shall be excepted from the requirements of the act. In substance it merely creates an exception, which has been said to be the general purpose of such clauses. *Interstate Commerce Commission* v. *Baird*, 194 U. S. 25, 36, 37. "The general rule of law is, that a proviso carves special exceptions only out of the body of the act; and those who set up any such exception must establish it," etc. *Ryan* v. *Carter*, 93 U. S. 78, 83. *United States* v. *Dixon*, 15 Peters, 141, 165. The rule applied to construction is applied equally to the burden of proof in a case like this. *United States* v. *Cook*, 17 Wall. 168; *Commonwealth* v. *Hart*, 11 Cush. 130, 134.

We come now to the main question. The opinion of the Supreme Court was as follows: "Whether the Act of Congress

. . . . has any applicability at all in actions for negligence in the courts of Pennsylvania, is a question that does not arise in this case, and we therefore express no opinion upon it. The learned judge below sustained the nonsuit on the ground of the deceased's contributory negligence and the judgment is affirmed on his opinion on that subject." It is said that the existence of contributory negligence is not a Federal question and that as the decision went off on that ground there is nothing open to revision here.

We certainly do not mean to qualify or limit the rule that, for this court to entertain jurisdiction of a writ of error to a state court, it must appear affirmatively that the state court could not have reached its judgment without tacitly, if not expressly, deciding the Federal matter. *Bachtel* v. *Wilson*, January 7, 1907, 204 U. S. 36. But on the other hand, if the question is duly raised and the judgment necessarily, or by what appears in fact, involves such a decision, then this court will take jurisdiction, although the opinion below says nothing about it. *Kaukauna Water Power Co.* v. *Green Bay & Missi. Canal Co.*, 142 U. S. 254. And if it is evident that a ruling purporting to deal only with local law has for its premise or necessary concomitant a cognizable mistake, that may be sufficient to warrant a review. *Terre Haute & Indianapolis Railroad Co.* v. *Indiana*, 194 U. S. 579. The application of this rather vague principle will appear as we proceed.

It is enacted by § 8 of the act that any employé injured by any car in use contrary to the provisions of the act, shall not be deemed to have assumed the risk thereby occasioned, although continuing in the employment of the carrier after the unlawful use had been brought to his knowledge. An early, if not the earliest, application of the phrase "assumption of risk" was the establishment of the exception to the liability of a master for the negligence of his servant when the person injured was a fellow servant of the negligent man. Whether an actual assumption by contract was supposed on grounds of economic theory, or the assumption was imputed because of a

conception of justice and convenience, does not matter for the present purpose. Both reasons are suggested in the well-known case of *Farwell* v: *Boston & Worcester R. R. Co.*, 4 Met. 49, 57, 58. But, at the present time, the notion is not confined to risks of such negligence. It is extended, as in this statute it plainly is extended, to dangerous conditions, as of machinery, premises and the like, which the injured party understood and appreciated when he submitted his person to them. In this class of cases the risk is said to be assumed because a person who freely and voluntarily encounters it has only himself to thank if harm comes, on a general principle of our law. Probably the modification of this general principle by some judicial decisions and by statutes like § 8 is due to an opinion that men who work with their hands have not always the freedom and equality of position assumed by the doctrine of *laissez faire* to exist.

Assumption of risk in this broad sense obviously shades into negligence as commonly understood. Negligence consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of, under the circumstances known to the actor, that he is held answerable for that result, although it was not certain, intended, or foreseen. He is held to assume the risk upon the same ground. *Choctaw, Oklahoma & Gulf R. R. Co.* v. *McDade*, 191 U. S. 64, 68. Apart from the notion of contract, rather shadowy as applied to this broad form of the latter conception, the practical difference of the two ideas is in the degree of their proximity to the particular harm. The preliminary conduct of getting into the dangerous employment or relation is said to be accompanied by assumption of the risk. The act more immediately leading to a specific accident is called negligent. But the difference between the two is one of degree rather than of kind; and when a statute exonerates a servant from the former, if at the same time it leaves the defense of contributory negligence still open to the master, a matter upon which we express no opinion, then, unless great care be taken, the

servant's rights will be sacrificed by simply charging him with assumption of the risk under another name. Especially is this true in Pennsylvania, where some cases, at least, seem to have treated assumption of risk and negligence as controvertible terms. *Patterson* v. *Pittsburg & Connellsville R. R. Co.*, 76 Pa. St. 389. We cannot help thinking that this has happened in the present case, as well as that the ruling upon Schlemmer's negligence was so involved with and dependent upon erroneous views of the statute that if the judgment stood the statute would suffer a wound.

To recur for a moment to the facts, the only ground, if any, on which Schlemmer could be charged with negligence is that when he was between the tracks he was twice warned by the yard conductor to keep his head down. It is true that he had a stick, which the rules of the company required to be used in coupling, but it could not have been used in this case, or at least the contrary could not be and was not assumed for the purpose of directing a nonsuit. It was necessary for him to get between the rails and under the shovel car as he did, and his orders contemplated that he should do so. But the opinion of the trial judge, to which, as has been seen, the Supreme Court refers, did not put the decision on the fact of warning alone. On the contrary, it began with a statement that an employé takes the risk even of unusual dangers if he has notice of them and voluntarily exposes himself to them. Then it went on to say that the deceased attempted to make the coupling with the full knowledge of the danger, and to imply that the defendant was guilty of no negligence in using the arrangement which it used. It then decided in terms that the shovel car was not a car within the meaning of § 2. Only after these preliminaries did it say that, were the law otherwise, the deceased was guilty of contributory negligence; leaving it somewhat uncertain what the negligence was.

It seems to us not extravagant to say that the final ruling was so implicated with the earlier errors that on that ground alone the judgment should not be allowed to stand. We are

clearly of opinion that Schlemmer's rights were in no way impaired by his getting between the rails and attempting to couple the cars. So far he was saved by the provision that he did not assume the risk. The negligence, if any, came later. We doubt if this was the opinion of the court below. But suppose the nonsuit has been put clearly and in terms on Schlemmer's raising his head too high after he had been warned. Still we could not avoid dealing with the case, because it still would be our duty to see that his privilege against being held to have assumed the risk of the situation should not be impaired by holding the same thing under another name. If a man not intent on suicide but desiring to live, is said to be chargeable with negligence as matter of law when he miscalculates the height of the car behind him by an inch, while his duty requires him, in his crouching position, to direct a heavy drawbar moving above him into a small slot in front, and this in the dusk, at nearly nine of an August evening, it is utterly impossible for us to interpret this ruling as not, however unconsciously, introducing the notion that to some extent the man had taken the risk of the danger by being in the place at all. But whatever may have been the meaning of the local courts, we are of opinion that the possibility of such a minute miscalculation, under such circumstances, whatever it may be called, was so inevitably and clearly attached to the risk which Schlemmer did not assume, that to enforce the statute requires that the judgment should be reversed.

*Judgment reversed.*

MR. JUSTICE BREWER, with whom concurred MR. JUSTICE PECKHAM, MR. JUSTICE McKENNA and MR. JUSTICE DAY, dissenting.

I dissent from the opinion and judgment in this case and for these reasons:

This was an action in the Common Pleas Court of Jefferson County, Pennsylvania, to recover damages on account of the death of the husband of plaintiff. On the trial the court or-

dered a nonsuit on the ground of contributory negligence on the part of the decedent, with leave to the plaintiff to move to take the same off. This motion was made and overruled; judgment for the defendant was entered, which was affirmed by the Supreme Court of the State. The decedent was killed while attempting to couple a steam shovel to a caboose. The steam shovel was being moved in interstate transportation and was not equipped with the safety coupler required by act of Congress of March 2, 1893, 27 Stat. 531. The eighth section of that act provides:

"That any employé of any such common carrier who may be injured by any locomotive, car or train in use contrary to the provision of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car or train had been brought to his knowledge."

This, while removing from the employé the burden of any assumption of risk, does not relieve him from liability for contributory negligence. For the rule is well settled that while, in cases of this nature, a violation of the statutory obligation of the employer is negligence *per se*, and actionable if injuries are sustained by servants in consequence thereof, there is no setting aside of the ordinary rules relating to contributory negligence, which is available as a defense, notwithstanding the statute, unless that statute is so worded as to leave no doubt that this defense is also to be excluded. *Taylor* v. *Carew Manufacturing Company*, 143 Massachusetts, 470; *Krause* v. *Morgan*, 53 Ohio St. 26; *East Tennessee, &c. Railroad Company* v. *Rush*, 15 Lea (Tenn.), 145, 150; *Queen* v. *Dayton Coal, &c. Company*, 95 Tennessee, 458; *Reynolds* v. *Hindman*, 32 Iowa, 146; *Caswell* v. *Worth*, 85 E. C. L. 849; *Buckner* v. *Richmond, &c. Railroad Company,* 72 Mississippi, 873; *Victor Coal Company* v. *Muir*, 20 Colorado, 320; *Holum, Admr., &c.* v. *Chicago, &c. Railway Company*, 80 Wisconsin, 299; *Kilpatrick* v. *Grand Trunk Railway*, 74 Vermont, 288; *Denver & R. G. Railroad Company* v. *Arrighi*, 129 Fed. Rep. 347; *Winkler* v. *Phila-*

*delphia &c. Railroad Company,* 4 Pennewill's Delaware Rep. 80. The Interstate Commerce Commission held this to be the rule in reference to this particular statute. 14th Ann. Rep. 1900, p. 84. Indeed it is not contended by the majority that the defense of contributory negligence has been taken away.

That there is a vital difference between assumption of risk and contributory negligence is clear. As said by this court in *Choctaw, Oklahoma, &c. Railroad Company* v. *McDade,* 191 U. S. 64, 68: "The question of assumption of risk is quite apart from that of contributory negligence." See also *Union Pacific Railway Co.* v. *O'Brien,* 161 U. S. 451, 456. This proposition, however, is so familiar and elementary that citation of authorities is superfluous.

In the motion for a nonsuit the second proposition was that "the evidence upon behalf of plaintiff proves conclusively that the accident happened because the deceased failed to keep his head at least as low as the floor of the steam shovel—that this omission was the fault of the deceased exclusively—and that deceased was guilty of contributory negligence and there can be no recovery in this case."

In ordering the nonsuit the trial court said:

"True, under said act he was not considered to have assumed the risks of his employment, but by this is certainly meant no more than such risks as he was exposed to thereby, and resulted in injury free from his own negligent act. It would hardly be argued that defendant would be liable, under such circumstances, were the employé to voluntarily inflict an injury upon himself by means of the use of the improperly equipped car. And yet it is but a step from contributory negligence to such an act.

*       *       *       *       *       *       *       *

"It seems very clear to us that, whatever view we may take of this case, we are led to the legal conclusion that decedent was guilty of negligence that contributed to his death, and that the plaintiff, however deserving she may be, or however much we regret the unfortunate accident, cannot recover."

The Supreme Court affirmed the judgment in the following *per curiam* opinion:

"Whether the act of Congress in regard to the use of automatic couplings on cars employed in interstate commerce has any applicability at all in actions for negligence in the courts of Pennsylvania is a question that does not arise in this case, and we therefore express no opinion upon it. The learned judge below sustained the nonsuit on the ground of the deceased's contributory negligence, and the judgment is affirmed on his opinion on that subject."

That contributory negligence is a non-Federal question is not doubted, and that when a state court decides a case upon grounds which are non-Federal and sufficient to sustain the decision this court has no jurisdiction is conceded.

While sometimes negligence is a mixed question of law and fact, yet in the present case, whether the decedent in attempting to make the coupling, after the warning given by the conductor, lifted his head unnecessarily and negligently, is solely a question of fact, and in cases coming on error from the judgment of a state court the findings of that court on questions of fact have always been held conclusive on us. See *Chrisman* v. *Miller,* 197 U. S. 313, 319, and the many cases cited in the opinion.

It would seem from this brief statement that the case ought to be dismissed for lack of jurisdiction. Escape from this conclusion can only be accomplished in one of these ways: By investigation of the testimony and holding that there was no proof of contributory negligence. If the case came from one of the lower Federal courts we might properly consider whether there was sufficient evidence of contributory negligence; but, as shown above, a very different rule obtains in respect to cases coming from a state court. We said this very term, in *Bachtel* v. *Wilson,* 204 U. S. 36, 40, in reference to a case coming from a state court to this: "Before we can pronounce this judgment in conflict with the Federal Constitution it must be made to appear that this decision was one necessarily in con-

flict therewith, and not that possibly or even probably it was." Before then we can disturb this judgment of the Supreme Court of Pennsylvania it must (paraphrasing the language just quoted a little) be made to appear that its decision of the question of contributory negligence was one necessarily in disregard of the testimony and not that possibly or even probably it was.

It cannot be said that there was no evidence of negligence on the part of the decedent. The plaintiff's testimony (and the defendant offered none) showed that deceased was an experienced brakeman; that the link and pin coupling was in constant use on other than passenger coaches; that before the deceased went under the car the pin had already been set; that as he was going under the car he was twice notified to be careful and keep his head down, and yet, without any necessity therefor being shown, he lifted his head and it was crushed between the two cars; that all he had to do was to guide the free end of the drawbar into the slot, and while the drawbar weighed seventy-five to eighty pounds, it was fastened at one end, and the lifting and guiding was only of the other and loose end; that the drawheads were of the standard height and the body of the shovel car higher than that of the caboose. Immediately thereafter the coupling was made by another brakeman without difficulty. If an iron is dangerously hot, and one knows that it is hot and is warned not to touch it, and does touch it without any necessity therefor being shown, and is thereby burned, it is trifling to say that there is no evidence of negligence.

A second alternative is that this court finds that the Supreme Court of Pennsylvania recognizes no difference between assumption of risk and contributory negligence. But that is not to be imputed in view of the rulings in the lower court, affirmed by the Supreme Court, to say nothing of the recognized standing and ability of that court.

Or we may hold that the Pennsylvania courts intentionally, wrongfully and without any evidence thereof found that there

was contributory negligence in order to avoid the binding force of the Federal law. During the course of the argument, in response to an interrogation, counsel for plaintiff in error bluntly charged that upon those courts. Of course this court always speaks in respectful terms of the decisions it reviews, but the implication of the most courteous language may be as certain as a direct charge.

It is intimated that the Pennsylvania courts confuse assumption of risk and contributory negligence—in other words, are unmindful of the difference between them, and *Patterson* v. *Pittsburg, &c. Railroad Company*, 76 Pa. St. 389, is cited as authority. That case was decided more than thirty years ago, and might, therefore, fairly be considered not an expression of the present views of those courts. But on examination of the case, in which a judgment in favor of the railroad was reversed by the Supreme Court, we find this language which is supposed to indicate the confusion (pp. 393, 394):

"In this discussion, however, we are not to forget that the servant is required to exercise ordinary prudence. If the instrumentality by which he is required to perform his service is so obviously and immediately dangerous, that a man of common prudence would refuse to use it, the master cannot be held liable for the resulting damage. In such case the law adjudges the servant guilty of concurrent negligence, and will refuse him that aid to which he otherwise would be entitled. But where the servant, in obedience to the requirement of the master, incurs the risk of machinery, which though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable that it may be safely used by extraordinary caution or skill, the rule is different. In such case the master is liable for a resulting accident."

Curiously enough in *Narramore* v. *Cleveland, &c. Railway Company*, 37 C. C. A. 499, 505, a recent decision of the Court of Appeals of the Sixth Circuit, in the opinion announced by Circuit Judge Taft is language not altogether dissimilar:

"Assumption of risk and contributory negligence approxi-

mate where the danger is so obvious and imminent that no ordinarily prudent man would assume the risk of injury therefrom. But where the danger, though present and appreciated, is one which many men are in the habit of assuming, and which prudent men who must earn a living are willing to assume for extra compensation, one who assumes the risk cannot be said to be guilty of contributory negligence if, having in view the risk of danger assumed, he uses care reasonably commensurate with the risk to avoid injurious consequences: One who does not use such care, and who, by reason thereof, suffers injury, is guilty of contributory negligence, and cannot recover, because he, and not the master, causes the injury, or because they jointly cause it."

For these reasons I dissent from the opinion and judgment, and am authorized to say that MR. JUSTICE PECKHAM, MR. JUSTICE McKENNA and MR. JUSTICE DAY concur in this dissent.