Price, J.
As to the manner in which plaintiff in error received his injury in the yards of the railway company at Ironton at the time "alleged, there is but little, if any, controversy. In our statement of the case is found a clear description of the situation of the cars to be coupled, and the plaintiff's relation thereto as he was about to make the coupling, as well as his conduct in attempting to make it, when his leg was caught and crushed between the draw-heads or draw-bars. The answer does not controvert the accuracy of the description given of the manner in which the plaintiff was injured, nor the extent of the injury, but it does controvert the allegations of the petition as to the negligence of the company and its responsibility for causing such injury.
After the trial court had eliminated from the casé all allegations of negligence save the three *284 stated to the jury, found in our statement, it further said to the jury: “These are the three grounds of negligence which the court takes from -the petition in this case to be submitted to you for your determination, as claimed by the plaintiff, and you will observe that all of these three various grounds of negligence relate to the matter of the coupling of these cars.”
This instruction was proper, under the law and the evidence, and limited the consideration of the jury to the vital questions in the case, as it then was evident that it would turn on the construction and applicability of an act of our general assembly entitled: “An act to promote the safety of employees and travelers upon railroads,” etc., passed March 19, 1906. This statute will be more fully noticed later in this opinion.
On the three grounds of negligence submitted to the jury, one or all, the general verdict found for the plaintiff.
At the request of the company, the court submitted certain interrogatories to be answered by the jury in case it returned a general verdict. These and the answers thereto are as follows:
“1. Do you find from the evidence that any defect which wholly or partially caused the injury complained of in the petition, existed in the defendant's track? Ans. Yes.
“2. Did defendant, or any of its officers or agents, prior to said accident, know of such alleged defect, or could they or either of them by the exercise of ordinary care have known of the same, and if so which officer or agent ? Ans. Yes, the yard-master.
*285 “3. From the evidence, what defect, if any, wholly or partially causing said injury, do you find existed at the time of the accident in said cars between which plaintiff claims to have been injured, or either of said cars, or their appliances?. Ans. The couplings.
“9. Do you find that the injury complained of by plaintiff in this case was caused by the combined negligence of plaintiff and defendant? Ans. No.
“10. If you find the defendant company guilty of any acts' of negligence, or omissions of duty in any regard, wholly or partially causing this accident, state fully all of said acts of negligence and omissions of duty. Ans. Defective track; defective couplings; the acute curve.
“11. Do you find that plaintiff himself was guilty of any negligence which directly contributed to his injury? Ans. No.”
These answers are consistent with the general verdict, and if the law was properly administered in the conduct of the trial and in the instructions given the jury, the pathway to recovery seems free of obstruction.
But the company claims that the evidence of plaintiff raises a presumption that he was negligent in going between the cars to make the coupling, knowing there was an automatic coupler on the two cars, and in using his foot to push one of the draw-bars so that it would come in proper place to effect the coupling, and that this presumption was not afterwards rebutted. And, further, his contributory negligence is affirmatively pleaded in the answer. It is further said in the *286 answer, in substance, that the plaintiff was familiar with the tracks, curve and kind of cars to be handled, and was experienced in the work of coupling and uncoupling cars at that place in the yards, and assumed the risk of the service under those circumstances.
Evidence was introduced tending to support these alleged defenses, and the company desired certain jury instructions on the facts which it had presented on these subjects, which the court declined to give. Several of the instructions involved the law of contributory negligence sought to be applied in this case. The others relate to the assumption of the risk by the plaintiff in the performance of his work when injured.
We select, as samples, two requests as to contributory negligence, and one as to the assumption of the hazards, and each of which the court refused to give.
“8. The court instructs the jury that if they believe from the evidence that plaintiff was guilty of any negligence which contributed to the injury complained of, then the jury must find a verdict for the defendant, even though they may further believe that the plaintiff was injured by negligence as charged in the petition.”
“10. I charge you that if you should find-from the evidence that said cars complained of were not properly equipped with automatic couplers, or that said cars or- any or all of their appliances were defective, or that defendant was guilty of any or all the alleged acts of negligence charged in the petition, yet if the plaintiff by his own carelessness and negligence contributed to the injury which he. *287 received, he cannot recover and your verdict must be for defendant.”
“15. Plaintiff in this case is presumed to assume the risk of injury which is incidental to the nature and character of the employment in which he is engaged, and against which the defendant could not, in the exercise of ordinary, care, have protected him, and if you find, that the injury complained of in this case was an ordinary peril of the service undertaken by plaintiff he cannot recover damages for such injury.”
Except for slight criticism of some of the language in which these requests are couched, they would be proper instructions as embracing the common law unaffected by legislation on the subject. But if the theretofore prevailing rules of the common law have been changed by the statutes of our state, relieving an injured employe from the effect of contributory negligence and assumption of the risk, the former rules will pot control.
Our general assembly has attempted to mitigate what it evidently considered the rigors and severity of such legal rules, and for that purpose passed the act already referred to in this opinion. The object of the statute, as stated in the title, was to promote the safety of employes and travelers upon railroads. See 98 O. L., 75. Among other provisions of the act is Section 2, which provides: “It shall be unlawful for any such common carrier to haul, or permit to be hauled or used on its line, any locomotive, car, tender, or similar vehicle used in moving state traffic, hot equipped with couplers coupling automatically by impact, and which can be uncoupled without the 'necessity of men going *288 between the ends of the cars.” The next section authorizes the common carrier to refuse to receive from connecting lines or from any shipper, any car not equipped in accordance with the foregoing sections of the act. The sixth section prescribes a penalty for non-compliance with the act.
• Section seven provides, “that any employee of any such common carrier, who may be killed or injured by any locomotive, tender, car, or similar vehicle or train, in use contrary to the provisions of this act, shall not be deemed thereby to have assumed thc\ risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, tender, car, similar vehicle, or train had been brought to his knowledge; nor shall such employee be held to have contributed to his injury in any case where the carrier shall have violated any provision of this act, when such violation contributed to the death or injury of such employee.”
This statute was in force before and at the time of the injury sustained by the plaintiff, and it seems to supplant the rules of the common law as to assumption of the risk and contributory negligence by the employe of a railway company, where it is a common carrier, and it would seem that it was competent for the legislature to work this change.
It is not averred in the answer, or attempted to be proved, that plaintiff was guilty of gross and willful negligence intending to be killed or injured, and we are not called upon to consider or decide what the effect of such evidence would be, if introduced. The purpose of the statute is plain. It *289 requires certain safety appliances to be adopted and used on all cars, etc., used in moving state traffic, and one of such appliances is an automatic coupler which will couple by the impact of the two cars to be coupled, and which can be uncoupled without the necessity of men going between the ends of the cars.
It has been suggested against the plaintiff that when he saw the coupler was out of order and not likely to work automatically by the impact, he should not have gone between the cars to assist in the coupling. But the plaintiff counters that argument or suggestion by saying it was necessary in order to complete the coupling that he push over one of the draw-bars; that he was ordered to do this switching promptly, and was in the discharge of duty when he did so. Evidently it was not a time for mature deliberation as to the best course of conduct, and we are inclined to think • that 'such cases are within the purview of the statute.
If this view of the statute is correct, the trial court did not err in refusing to charge the jury as requested by the company. To have done so would have been in the face of the statute. In the general charge, the court went to the very verge of conflict with the statute in its liberality to the contention made for the railway company. Our statute is very similar to the Federal statute on the same subject, as a comparison will show, except that the latter deals with carriers engaged in interstate commerce. The Federal statute has received judicial construction by the supreme court of the United States, in several cases, some of *290 which are: Johnson v. Southern Pacific Co:, 196 U. S., 1; Schlemmer v. Railway Co., 205 U. S., 1; St. Louis, Iron Mountain, etc., Ry. Co. v. Taylor, Admx., 210 U. S., 281.
Federal courts inferior to the supreme court have also ruled as to the construction and scope of the same statute, as appears in Voelker v. Chicago, etc., Ry. Co., 116 Fed. Rep., 867; same parties in 129 Fed. Rep., 522; United States v. Southern Pacifc Co., 154 Fed. Rep., 897; United States v. Atchison, etc., Ry. Co., 167 Fed. Rep., 696; United States v. B. & O. Rd. Co., 170 Fed. Rep., 456; Chicago, etc., Ry. Co. v. United States, 170 Fed. Rep., 556. We may add other cases cited in brief of counsel. It is true that some of these were cases to enforce the statutory penalty, in some of which the railway company defended on the ground of having used ordinary care to comply with the act, but which was held to be no defense. The consensus of opinion to be gathered from all the cases that treat of our present question, is, that such a statute imposes a positive and absolute duty on the railway companies to furnish the appliances required, * and that neither the assumption of the risk bjr the employe, or his contributory negligence, affords a shield for the railway company, where death or injury results from a failure to comply with the statute.
In St. Louis, Iron. Mountain & Southern Ry. Co. v. Taylor, 210 U. S., 281, it was held, as one of the propositions decided, that “the Safety Appliance Act of March 2, 1893, supplants the common law rule of reasonable care on the part of the employer as to providing the appliances defined *291 and specified therein, and imposes upon the interstate carriers an absolute duty;' and the common law rule of reasonable care is not a defense where in point of fact the cars used were not equipped with appliances complying with the standard' established by the act.” Some of the cases above cited also hold that equipping the cars with automatic couplers is not the whole duty of the carrier, but that such coupler must be kept in working order so as to couple by impact, and this is a reasonable requirement,. in order to accomplish the purposes of the statute, to secure the safety of employes.
The courts of last resort of several of the states have passed on similar statutes, and the cases are cited in the., briefs.
So we have here a case where the coupler was loose on the carriers, and instead of having play of one or two inches laterally, the testimony tends to show, that by reason of wear, the lateral play was four or five inches, and that the coupling could not be made on that acute curve without the plaintiff going between the cars to render personal assistance.
But it is said in the answer that the company, in the use of the cars where plaintiff was injured and when he was injured, was not moving state traffic but was engaged in interstate commerce, in such use of the cars, and therefore our statute does not apply to plaintiff’s case. This was a question of fact for the jury to decide, and as they were properly instructed on the subject, they have found against the company. If we look into the evidence, we find that there is evidence tending to support the finding, although it is not absolutely clear. *292 Frank Peters, a witness for plaintiff, was called, who testified he was agent of the company at Ironton at date of the injury, and that the cars involved were loaded with cross-ties at Ironton and billed to Alexis on L. S. & M. S. railway, as billing point, but to Wauseon, Ohio, as the destination.
This being true, the cars were being used in moving state traffic and not engaged in interstate commerce.
On the facts, we believe the circuit court did not properly recognize the meaning of the enactment of pur g-eneral assembly and reversed the judgment of the court of common pleas on insufficient grounds. If the trial court was justified in refusing to give charges we have set out in this opinion, it was equally justified in refusing five, six and sixteen, for which the circuit court reversed the judgment. While this statute is in derogation of the common law, it should receive a reasonable construction to secure the safety of a large and useful class of our fellow men.
The judgment of the circuit court is reversed and that of the common pleas affirmed.

Reversed.

Spear, C. J., Davis, Siíauck, Joi-inson and Donahue, JJ., concur.