No. 21,416.

L. W. GEORGE, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*No Buffer Appliances on Cars—No Liability Established.* A railroad company is not required to equip its cars with buffers or bumpers for the protection of brakemen in coupling or uncoupling cars. Hence, the findings that the negligence in this case consisted in the failure to equip with buffer and buffer appliances do not establish liability.

2. SAME—*Equipment of Cars Required for Protection of Brakemen in Coupling and Uncoupling Cars.* A train is required to have eighty-five per cent of its cars equipped with air brakes, so that it can be operated by the engineer, thus rendering it necessary to have certain of the cars connected by air hose. While in the complete process of uncoupling, the coupler itself and also the air hose and safety chains may have to be disconnected, there is no requirement that the cars be so equipped that such air hose or safety chains can be disconnected without going between the cars.

3. SAME—*Allegations—Proof.* Two of the three alleged grounds of negligence being based on matters not required of the defendant, and the other having failed of proof, the plaintiff cannot prevail.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed April 6, 1918. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*W. L. Cunningham,* of Arkansas City, for the appellee.

The opinion of the court was delivered by

WEST, J.:   The plaintiff recovered a judgment for injuries received in uncoupling a car at Maramec, Okla.   It was alleged that the coach was defective in this:

"That it had no buffer to prevent the same from running up against the next car in front of it, . . . that it was defective in that the brake on said car did not operate properly, . . . that it was further defective in that it was not so constructed that it could be uncoupled from the car connected with it without the brakeman going between the cars and uncoupling the air hose and also the safety chain."

It was averred that in obedience to the direction of the defendant the plaintiff went between the coach in question and the next one in front and attempted to uncouple the air hose and disconnect the safety chain, but just as he uncoupled the air hose the air locked and the brake on the car released so that the car moved forward and caught his head between projecting bolts on each of the cars, striking him behind the ears and severely injuring him.   The answer contained a general denial, and alleged contributory negligence and assumption of risk. The jury found the negligence of the defendant to consist in not properly equipping the coaches with buffers to hold them apart, and that the plaintiff was not guilty of contributory negligence.   Also:

"9. Was the equipment of the mixed train . . . usual and ordinary equipment of such trains used and employed by the railroad companies for such service?   Ans.   According to evidence it was not properly equipped; as [to] being equipped for that particular kind of service we do not know."

The defendant appeals, and insists that what the jury called negligence is not negligence at all.   The plaintiff testified that there was no buffer on these cars, that bumpers were supposed to bump together to keep the cars from coming close together, but did not know that he had ever used one himself.   It is said that the list of safety appliances which railway companies are required to keep by virtue of the safety-appliance act and the orders of the interstate commerce commission does not include

buffers or bumpers. Further, that buffers might come together as well as the ends of the coaches, and therefore an employee might be crushed between the former as well as between the latter. The court instructed that the law requires all railroads to equip its trains and cars with all reasonable and approved safety appliances and to make such frequent examinations, inspections, and adjustments as would keep the trains and cars and appliances in a reasonably safe condition, and that while an employee assumes the ordinary risks he does not assume that of injury to himself when it occurs by reason of the failure of the companies to furnish reasonable safety appliances and equipment. It is said that this instruction ignored the doctrine that if the plaintiff went between the cars to uncouple them with full knowledge of the fact that they were not equipped with buffers he assumed the risk. The plaintiff testified:

"If the car had n't have come forward I would have been perfectly safe in the position I was in. I knew that if it did come forward I would n't be safe. There have been lots of them caught that way and killed that way. I knew that at the time. I did not have it in mind right at the time I was working there. I knew that was a dangerous feat and that it had to be performed every time I uncoupled cars. I was perperfectly well aware of the danger of going in there."

When the plaintiff testified that he knew it was a dangerous feat and was perfectly well aware of the danger of going between the cars, he evidently meant that the danger consisted in the possibility or likelihood of the cars coming together. He knew and could see that there were no bumpers or buffers, and, as he said, if the car had not come forward he would have been perfectly safe. It was the danger of coming forward without warning that attended his efforts, and it was the actual coming forward that caused his injury. It is possible that if bumpers had been placed in the center of the platform in each of the cars he might have escaped injury by keeping his head to one side of the center of the car ends, but it seems about equally possible that he might have been crushed between the bumpers instead of the platforms by raising his head so as to be caught between the bumpers.

His allegation that the air coupling was defective was not sustained by the findings of the jury, who confined the matter

of negligence to the failure to equip the cars with buffers, except as indicated by finding 9 already referred to.

The definitions of buffer indicate a contrivance to mitigate the shock caused by cars coming together, rather than a safety appliance, Webster defining it as an elastic apparatus or fender for deadening the jar caused by the collision of bodies. Cases are cited in which cars were provided with buffers which, failing to meet vertically or horizontally, caused injury, and the companies were held liable. But we have neither had cited, nor have we found, a federal decision or rule requiring buffers or bumpers, although one or two state cases are pointed out which seem to regard them as protectives for the workmen. The following portion of the plaintiff's cross-examination is the entire evidence touching bumpers:

"There was no buffer or muffler on these cars that I remember of. I don't know as I ever used one of them myself. The bumpers are supposed to bump together to keep the cars from coming close together. There was nothing of that kind on these two cars."

It is claimed that disconnecting the air hose is a part of the process of uncoupling, and *United States v. Boston & M. R. Co.*, 168 Fed. 148, is cited. There the district judge in charging the jury stated that—

"A man engaged in connecting or disconnecting the air hose between the cars is engaged in coupling or uncoupling cars within the meaning of the statute, if it is necessary for him to connect or disconnect that hose in order to connect or disconnect the cars." (p. 152.)

But we are unable to find any other rule or holding to this effect. The safety-appliance act and the orders of the interstate commerce commission require a railroad company to have eighty-five per cent of the cars composing a train equipped with air, so that the train can be operated by the engineer. No means appears to have been devised or required for uncoupling the air hose or safety chains without going between the cars, as in case of the coupler itself. Hence, while in uncoupling two cars, connected as these were by a coupler, safety chains, and air hose, it is true in a generic sense that disconnecting the air hose is a part of the process, we are unable to agree that it is a part of the process of uncoupling within the meaning of the safety-appliance act, which has made no requirement concerning the disconnecting of such air hose while remaining clear

from the ends of the cars. The operation necessary in the case of cars connected with chains and air hose was thus described by the plaintiff:

"After the train stopped the first thing I did was to go in to cut the coach off. I turned the angle cock. They are right back on each car. One in front of the car and one behind on the side of the drawbar. It cuts the air off of each car. That does not release the brake. It has nothing to do with the brake. The brake is still set after that is turned. You have to open the brake hose and open the angle cock to release the brake, let out the air. Have to bleed the car to let the air out of it. I did not do that that day. I did n't do anything to release the brakes. There is no way to shut off the angle cock without going between the cars to do it. In order to uncouple the cars you have to turn each of the angle cocks. Then we have to unhook the safety chains. We just take out the big hook that hooks into the link of a chain. There is one of these on each side. To unhook the one on the other side we reach over the drawbar. Otherwise you would have to go around the car. It is the customary way to reach over the drawbar. I never did see anybody go around in the two years I worked there. After I unhooked the safety chains the next step in the process of uncoupling was to break the air-hose. To do that you catch them in the center and lift up on them. We let them hang down. The next process is to lift the pin. We do that by a lever on the outside of the car. We step back and lift that out with the lever. . . . I was standing when I unhooked the safety chains. My head was straight up. That brought the bumper about to my waist. I first unhooked the chain next to me. I was on the east side of the train. Then I unhooked the other chain by reaching over the drawbar. It is easily reached from there. That is the way I always did it. I next turned the angle cocks. You have to turn them off before you break the air hose. If you don't the hose will fly up and hit you in the face. When you turn the angle cocks you are ready to uncouple the hose. That is all that remains to be done."

Counsel says that in *Schlemmer v. Buffalo, Rochester, &c. Ry.*, 205 U. S. 1, it was held to be a question for the jury whether the company was negligent in failing to provide its cars with buffers. An examination of that decision shows that plaintiff alleged that the coupling was not such as was required by existing laws. The court having directed a nonsuit, the plaintiff moved "to take it off," one ground being that the decedent "was not deemed to have assumed the risk owing to the fact that the car was not equipped with an automatic coupler." (p. 9.) It was said in the opinion that, instead of an automatic coupler, the car had an iron drawbar fastened underneath by a pin projecting about a foot beyond the car.

This drawbar weighed about eighty pounds, and its free end played up and down.   On this end was an eye, and the coupling had to be done by lifting the free end possibly a foot so that it could enter a slot in an automatic coupler on the caboose and allow a pin to drop through the eye.

"Owing to the absence of buffers on the shovel car and to its being so high that it would pass over those on the caboose, the car and caboose would crush anyone between them if they came together and the coupling failed to be made."   (p. 8.)

We do not find in the statement or in the opinion anything to indicate that an instruction leaving it to the jury to say whether or not the absence of buffers constituted negligence, was given. In this opinion it was held that assumption of risk as extended to dangerous conditions of machinery obviously shades into negligence as commonly understood, the difference between the two being one of degree rather than of kind.   From this opinion Justices Brewer, Peckham, McKenna and Day dissented.     In 220 U. S. 590, when the case was again before the court, it was unanimously decided that there is a practical and clear distinction between assumption of risk and contributory negligence.   Hence, we could not regard the cited *Schlemmer* decision as controlling, even if in point.

It is said in the defendant's brief that there was no pretense that the defendant had violated any of the safety-appliance acts of congress.   Neither do we find any such claim in the plaintiff's brief, aside from the one that the defendant was required to equip its cars with bumpers.

This, then, is the situation:   The negligence charged consisted of failure to equip with bumpers, of failure of the air brake to act properly, and failure to equip so that the car "could be uncoupled from the car connected with it without the brakeman going between the cars and uncoupling the air hose and also the safety chain."   The law requires neither the first nor the third, and the jury disregarded the second.   Hence, the plaintiff cannot prevail.

The judgment is reversed and the cause remanded with direction to enter judgment for the defendant.