## THE ALGIE.

### No. C–2641.

District Court, E. D. New York.

Jan. 11, 1932.

Rehearing Denied March 8, 1932.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Alfred C. McKenzie, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for libelant.

Louis Halle, of New York City, for claimant.

SLICK, District Judge.

The British oil screw Algie was boarded by the Coast Guard officers on Sunday, February 15, 1931, about 7:30 a. m. There were eleven men in the crew. The crew were arrested and taken to shore. The ship was about 200 yards off shore, just north of Montauk Point, Long Island. The seas were washing over her; she was covered with ice when the Coast Guard boarded her. The ship was in distress, together with the crew and her engines. She had on board a cargo of liquor, rye and scotch whisky, and this contained more than one-half of 1 per cent. of alcohol by volume.

She was in distress and in great danger. She had no manifest entitling her to land at

any American port. She had paid no tariff on the cargo. The evidence fairly discloses, and the legitimate inference is, that she was not in the location where she was found and boarded by the Coast Guard crew because she had floated there in distress.

She had been cleared from the Bermuda Islands and was en route to St. Pierre, Miquelon, Canada. She was 480 to 500 miles off her course between the port of clearance and her destination.

She had been observed by Coast Guard vessels from January 11th down to February 13th, which was two days before her arrest. She cleared from the Bermuda Islands on February 4th, so that the cargo which she had on February 15th must have been the cargo that she had when she cleared. She had frequently come under these observations by several Coast Guard boats and attempted to escape, and the evidence clearly discloses an intention on her part to land at some American port, or to land her cargo at some place along the American shore.

She made no signal of distress, although the Coast Guard boats approached within something like 100 yards, that varied from 100 yards to a quarter of a mile.

Two days before her arrest (February 13th), while under observation at 6:45 a. m., she made no signal of distress. She was seen by Commander Ford on another boat February 11th, 12th, and 13th, and made several attempts to escape from their observation and finally did escape in the night.

The value of the cargo is $30,000, which is conceded. The value of the ship at that time, in her disabled condition, was $4,000. No tax was paid upon the cargo of intoxicating liquors found on the Algie on February 15, 1931, to the collector of internal revenue, and no permit was found on the vessel for the transportation of the said liquors or to bring those liquors within this district.

■ It is argued that the libel does not allege, nor does the evidence disclose, that the Algie did not come in in distress. This was a defense, and not a part of the government's original case. In fact, claimant practically concedes this in the sixth paragraph of answer, where it is alleged as a defense "that the said vessel was compelled to seek shelter by reason of distress, and for that reason only, came into a port of the United States."

■ It is well settled that exceptions to the operation of a statute need not be negatived in a complaint and must be relied on and pleaded as a defense.

If the very learned counsel for claimant had not so understood the law of pleading, he would not have pleaded this defense specially. Schlemmer v. Buffalo, Rochester & Pittsburg Ry. Co., 205 U. S. 1, 27 S. Ct. 407, 51 L. Ed. 681; United States v. Randell et al. (D. C.) 49 F.(2d) 344. The Aurora, 7 Cranch (11 U. S.) 382 at page 389, 3 L. Ed. 378, where it was said: "In no case can it be necessary to state in a libel, any fact which constitutes the defence of the Claimant, or a ground of exception of the operation of the law on which the libel is founded."

No witnesses were called by claimant on this or any other issue. If, as argued, the Algie was blown in by the storm or became crippled at sea and came in to seek shelter, this would have been an easy matter to prove by the simple expedient of calling one or more of her crew as witnesses at the trial, or by taking their depositions.

■ There is an old rule of evidence quite apropos here, to the effect that, where evidence is peculiarly within the knowledge and control of one party and it is not produced and no explanation offered as to why it is not produced, the presumption follows that, if it had been produced, it would have been detrimental to the party producing it.

■ The inference is irresistible that the Algie and her crew were engaged in an unlawful attempt to land her cargo of foreign liquors without paying the tax. She was not discovered in the act of transporting intoxicating liquor within the meaning of the National Prohibition Act. That she had been engaged in transportation within the three-mile limit there can be no doubt, but no officer discovered her in such violation. Hence no forfeiture could be predicated upon a charge under that act.

■ The claim of the Todd Corporation for repairs having been disposed of since the trial, and bond having been given for the vessel since the trial in the sum of $4,000, the only question remaining for decision is the one discussed above, to wit, whether or not the government under its libel is entitled to forfeiture of the vessel.

The order will be that the vessel be forfeited, and that the government have judgment in the sum of $4,000 and costs, unless that amount is paid within twenty days. The district attorney may prepare the proper order and submit it on notice.