# SCHLEMMER, NOW CRAIG, *v.* BUFFALO, ROCHESTER AND PITTSBURG RAILWAY COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 374. Argued April 3, 1911.—Decided May 15, 1911.

Where on writ of error the case is reversed on the Federal question and remanded to the highest state court for further proceedings in conformity with the opinion of this court, the state court should, in its remittitur require the further proceedings by the lower court to be in conformity with the opinion of this court, as the matter involved is a Federal right within the protection of this court.

If, however, the trial court on the second trial of a case reversed by this court on the Federal question does give to the statute involved the construction and effect given by this court, the judgment will not be reversed because the remittitur from the highest court to which the mandate of this court was sent, did not specifically direct that further proceedings be had in conformity with the opinion of this court.

The Safety Appliance Acts of March 2, 1893, c. 196, 27 Stat. 531; April 1, 1896, c. 87, 29 Stat. 85; March 2, 1903, c. 976, 32 Stat. 943, took away from the carrier the defense of assumption of risk by the employé but did not affect the defense of contributory negligence.

There is a practical and clear distinction between assumption of risk and contributory negligence. By the former, the employé assumes the risk of ordinary dangers of occupation and those dangers that are plainly observable; the latter is the omission of the employé to use those precautions for his own safety which ordinary prudence requires.

Under the Safety Appliance Acts, an employé does not by reason of his knowledge of the fact, take upon himself the risk of injury from a car unequipped as required by the acts—but he is not absolved from duty to use ordinary care for his own protection merely because the carrier has failed to comply with the law; and, in the absence of legislation taking it away, the defense of contributory negligence is open.

On the record in this case there appears to have been contributory

negligence on the part of plaintiff's intestate, apart from the question of assumption of risk, and the state court denied plaintiff no Federal right under the Safety Appliance Acts in dismissing the complaint on the ground of contributory negligence.
222 Pennsylvania, 470, affirmed.

THE facts, which involve the construction of the Safety Appliance Acts and the duties and rights of carriers and of their employés thereunder, are stated in the opinion.

*Mr. Frederic D. McKenney,* with whom *Mr. John Spalding Flannery, Mr. William Hitz, Mr. Edward A. Moseley* and *Mr. A. J. Truitt* were on the brief, for plaintiff in error.

*Mr. Marlin E. Olmsted,* with whom *Mr. A. C. Stamm* and *Mr. John G. Whitmore* were on the brief, for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This action was brought in a Pennsylvania court to recover for wrongfully causing the death of Adam M. Schlemmer, plaintiff's intestate, as a result of injuries received while in the employ of the railroad company. The case has been once before in this court, and is reported in 205 U. S. 1, 13. The injury was received while Schlemmer, an employé of the defendant railroad company, was endeavoring to couple a shovel car to the caboose of one of the railroad trains of the defendant company.

Before the case first came here the Supreme Court of Pennsylvania had held that the plaintiff could not recover damages because of the contributory negligence of the deceased. 207 Pa. 198. This court reversed the Supreme Court of Pennsylvania, and remanded the case for further proceedings in conformity with the opinion of this court.

For a proper understanding of the case a brief state-

ment of the facts will be necessary. The shovel car was
not equipped with an automatic coupler as required by
the act of March 2, 1893, c. 196, § 2, 27 Stat. 531, and
that fact was the basis of the action for damages. The
shovel car had an iron drawbar, weighing somewhere
about eighty pounds, protruding beyond the end of the
shovel car. The end of this drawbar had a small opening,
or eye, into which an iron pin was to be fitted when the
coupling was made; this was to be effected by placing the
end of the drawbar into the slot of the automatic coupler
with which the caboose was equipped. Owing to the dif-
ference in the height, the end of the shovel car would pass
over the automatic coupler on the caboose in case of an
unsuccessful attempt to make the coupling, and the end
of the shovel car would come in contact with the end of
the caboose.

Plaintiff's intestate was an experienced brakeman, hav-
ing been in the service fifteen or sixteen years. At the
time when he undertook to couple the train with the
shovel car to the end of the caboose, he went under the
end of the shovel car and attempted to raise the iron
drawbar so as to cause it to fit into the slot of the auto-
matic coupler on the caboose. While so doing his head
was caught between the ends of the shovel car and the
caboose, and he was almost instantly killed. This hap-
pened between eight and nine o'clock on an evening in the
month of August, and while dusk had gathered it was not
very dark, and the testimony tends to show that the situa-
tion was plainly observable.

When this case was first before the Supreme Court of
Pennsylvania, that court expressed doubt as to whether
the act of Congress applied in actions of negligence in the
courts of Pennsylvania, and the judgment on the non-
suit in the court below was sustained because of the con-
tributory negligence of the deceased.

This court held that the shovel car was in course of

transportation between points of different States, and therefore was being used in interstate commerce; that the shovel car was a car within contemplation of § 2 of the act of Congress; that § 8 of that act had deprived the company of the defense of assumed risk on the part of an employé; that the ruling in the Pennsylvania court upon contributory negligence was so dependent upon an erroneous construction of the statute that it could not stand. 205 U. S. 1, 13. As the alleged right to recover was under a Federal statute, alleged to have been improperly construed against the plaintiff in error, the case presented a claim of Federal right, a denial of which was reviewable here, and the case, for the reason stated, was reversed by this court and sent back for further proceedings in conformity with the opinion of this court.

We find no occasion to depart from the former decision, and will proceed to examine the record as now presented, which, in material respects, differs from the one previously before the court. It is first objected by the plaintiff in error that the Supreme Court of Pennsylvania remanded the case to the lower court for trial contrary to the mandate sent down upon the reversal by this court. The Supreme Court of Pennsylvania remitted the case, after receipt of the mandate from this court, to the lower court to be retried "on the settled principles of contributory negligence, as heretofore declared in the decisions of this court"—Supreme Court of Pennsylvania. The counsel for plaintiff in error moved the Supreme Court of Pennsylvania to amend its judgment and remittitur so as to conform with the mandate of this court, which motion was overruled.

We are of opinion that the order and remittitur of the Supreme Court of Pennsylvania, in compliance with the mandate of this court, should have required the further proceedings to conform to the opinion of this court, as its mandate required, and as was within the authority of this

court, the matter involved being a right of Federal crea- tion within the ultimate protection of this court.

If an examination of the record indicated that by reason of this mandate the subsequent proceedings in the state court had operated to deprive the plaintiff in error of the benefit of a trial under the Federal statute properly construed, we should be constrained to reverse the case. But an examination of the record discloses that the trial judge regarded the decision of this court as settling the right of the plaintiff in error to rely upon the Federal statute in question, and as conclusive of the fact that the shovel car was being employed in interstate commerce at the time of the injury, and was a car within the meaning of the act, and that assumption of risk was no defense to the action. So, it does not appear that the form of mandate sent down by the Supreme Court of Pennsylvania, after the case was reversed here, worked to the prejudice of the plaintiff in error.

The trial court submitted the case to the jury upon the issues joined under the Federal statute, including the question whether the plaintiff's intestate at the time of the injury had been guilty of contributory negligence. Under these instructions the jury found a verdict for the plaintiff.

The court then granted a rule to show cause why judgment should not be rendered *non obstante veredicto*, which motion was granted, and an opinion delivered, in which the judge held that the testimony did not warrant the conclusion that in making the coupling the risk was so obvious that an ordinarily careful and prudent brakeman would not have undertaken it; and therefore under the statute, assumption of risk was no defense, but reached the conclusion that the deceased was guilty of contributory negligence in failing to exercise care according to the circumstances in making the coupling in the way he attempted to make it, and in not adopting a safer way, which was pointed out to him at the time.

Upon the second appeal the Supreme Court of Pennsylvania affirmed the judgment of the trial court, saying:

"*Per Curiam:* It is the settled law of Pennsylvania that any negligence of a party injured, which contributed to his injury, bars his recovery of damages without regard to the negligence, either greater or less than his own, of the other party. The present is a clear case of contributory negligence within this rule. The evidence is indisputable that the unfortunate decedent not only attempted to make the coupling in a dangerous way when his attention was directly called to a safer way, but also did it with reckless disregard of his personal safety by raising his head, though twice expressly cautioned at the time as to the danger of so doing." 222 Pennsylvania, 470.

The case is now here upon a petition in error to reverse this judgment of affirmance. The statute at the time of the injury complained of took away assumption of risk on the part of the employé as a defense to an action for injuries received in the course of the employment. The defense of contributory negligence was not dealt with by the statute.[1]

When the case was here before we did not find it necessary to pass upon the question whether contributory negligence on the part of an injured employé would be a defense to an action under the law as it then stood, for upon the record as then presented the court was of opinion that to sustain the defense of contributory negligence would amount to a denial to the plaintiff of all benefit of the statute which made the assumption of risk no longer a defense.

While, as was said in the case when here before, assump-

---

[1] By the third section of the act of April 22, 1908, 35 Stat. 65, c. 149, amending the Employers' Liability Act, no employé injured or killed is to be held guilty of contributory negligence in any case where the violation by a common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé.

tion of risk sometimes shades into negligence as com-
monly understood, there is, nevertheless a practical and
clear distinction between the two.  In the absence of
statute taking away the defense, or such obvious dangers
that no ordinarily prudent person would incur them, an
employé is held to assume the risk of the ordinary dangers
of the occupation into which he is about to enter, and also
those risks and dangers which are known, or are so plainly
observable that the employé may be presumed to know
of them, and if he continues in the master's employ with-
out objection, he takes upon himself the risk of injury from
such defects.  *Choctaw, Oklahoma &c. R. R. Co.* v. *Mc-
Dade,* 191 U. S. 64, 67, 68, and former cases in this court
therein cited.

Contributory negligence, on the other hand, is the omis-
sion of the employé to use those precautions for his own
safety which ordinary prudence requires.  (See in this
connection *Narramore* v. *Cleveland &c. R. R. Co.,* 37 C. C.
A. 499, 506.)

In the present case, the statute of Congress expressly
provides that the employé shall not be deemed to have as-
sumed the risk of injury if such is occasioned by his con-
tinuing in the employ of the carrier after the unlawful use
of the car or train in the failure to provide automatic
couplers has been brought to his knowledge.  Therefore,
when Schlemmer saw that the shovel-car was not equipped
with an automatic coupler he would not from that knowl-
edge alone, take upon himself the risk of injury without
liability from his employer.

But there is nothing in the statute absolving the em-
ployé from the duty of using ordinary care to protect
himself from injury in the use of the car with the appliances
actually furnished.  In other words, notwithstanding the
company failed to comply with the statute, the employé
was not for that reason absolved from the duty of using
ordinary care for his own protection under the circum-

stances as they existed. This has been the holding of the courts in construing statutes enacted to promote the safety of employés. *Krause* v. *Morgan*, 53 Oh. St. 26; *Holum* v. *Railway Co.*, 80 Wisconsin, 299; *Grand* v. *Railway Co.*, 83 Michigan, 564; *Taylor* v. *Manufacturing Co.*, 143 Massachusetts, 470. And such was the holding of the Court of Appeals of the Eighth Circuit, where the statute now under consideration was before the court. *Denver & Rio Grande R. R. Co.* v. *Arrighi*, 129 Fed. Rep. 347.

In the absence of legislation, at the time of the injury complained of, taking away the defense of contributory negligence, it continued to exist, and the Federal question presented upon this record is: Was the ruling of the state court in denying the right of recovery upon the ground of contributory negligence, in view of the circumstances shown, such as to deprive the plaintiff in error of the benefit of the statute which made assumption of risk a defense no longer available to the employer? To answer this question we shall have to look to the testimony adduced at the trial, all of which is contained in the record before us. As we have already said, the testimony shows that the plaintiff's intestate was an experienced brakeman. A witness who is uncontradicted in the record testified that just before Schlemmer got out of the caboose, when he saw the train backing up, he was told: "We had better shove that up by hand, the same as we did in Bradford. That is a dangerous coupling to make." (At Bradford the method of making the coupling was by means of pushing the caboose up against the train instead of backing the train against the caboose.) To this Schlemmer replied, with emphasis, "Back up." He then proceeded to make the coupling, with the result stated.

Another witness, the yard conductor, testified without contradiction, that just before the cars got together he walked up to Schlemmer, and told him they had better shove the caboose on by hand, to which he answered:

"Never mind, I will make this coupling." To which the witness answered: "Well, you will have to get down." Witness testified that he called to him twice to get down, the last time not more than a second possibly a couple of seconds, before he was injured. This witness furthermore testified that he had a sufficient crew to push the caboose up by hand, that there was plenty of force to shove the caboose up in that way; that that was a great deal safer way to make the coupling than backing on to the caboose. The testimony further shows that there was plenty of room under the projection of the shovel car to operate the drawbar and raise it up. In fact, in this manner, the coupling was made a few minutes after the unfortunate occurrence which resulted in the death of the deceased.

As the record is now presented there is no proof in the case that the deceased was ordered to make the coupling in the manner he did, and there is testimony to the effect that just before the injury the conductor in charge of the train said to the deceased: "Mr. Schlemmer, you be very careful now, and keep your head down low, so as not to get mashed in between those cars." He said he would.

In view of this record we cannot say that the court, in denying a recovery to the plaintiff upon the ground of contributory negligence of the deceased denied to her any rights secured by the Federal statute. Entirely apart from the question of assumption of risk, which, under the law, could not be a defense to the plaintiff's action, as the law then stood there remained the defense of contributory negligence.

After an examination of the record as now presented, containing testimony not adduced at the former trial, we are constrained to the conclusion that there was ample ground for saying, as both the trial court and the Supreme Court of the State of Pennsylvania did, that the decedent met his death because of his unfortunate attempt to make the coupling in a dangerous way, when a safer way was at

the time called to his attention.   Furthermore, he was injured in spite of repeated cautions, made at the time, as to the great danger of being injured if he raised his head in attempting to make the coupling in the manner which he did.

As we have said, the Federal question in the record, and the only one which gives us jurisdiction, is: Did the trial and judgment deprive the plaintiff in error of rights secured by the Federal statute?   The views which we have expressed require that the question be answered in the negative.

The judgment of the Supreme Court of Pennsylvania is

*Affirmed.*