LYDDY v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Sixth Circuit. June 8, 1912.)

No. 2,185.

MASTER AND SERVANT (§ 281*)—ACTION FOR DEATH OF BRAKEMAN—SUFFICIENCY OF EVIDENCE—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate was a brakeman employed on a train on defendant's railroad engaged in interstate commerce, when two cars with defective

couplers were taken into the train at a way station. The conductor afterward called the attention of the two brakemen to the fact that there was a small leak in the air brake pipes, which they understood to be an order to find and repair it. While the train was stopped after dark at coal chutes for the purpose of coaling, deceased, who was in the caboose with the conductor, went out with his lantern without saying where he was going, and shortly after, when the train had moved backward a few feet, he was found lying beside the track fatally injured. There was evidence tending to show that he had probably gone between the defective cars and turned the cock of an air brake, but no further evidence as to the manner of his injury, and, so far as appeared, no one knew of any intention on his part to fix the brake pipes. *Held*, that there was no evidence upon which to charge defendant with liability for his death; that, while the moving of the defective cars was in violation of law, the defects were not the proximate cause of the injury, and deceased was clearly negligent in going between the cars without warning to any one, and knowing that they were likely to be moved from one chute to another, or to proceed at any moment without warning.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987-996; Dec. Dig. § 281.*]

In Error to the District Court of the United States for the Middle District of Tennessee.

Action at law by Lelia Lyddy, administratrix of William F. Lyddy, deceased, against the Louisville & Nashville Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

H. N. Leech, of Clarksville, Tenn., for plaintiff in error.

John B. Keeble, of Nashville, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. This was an action for personal injuries resulting in the death of William F. Lyddy, alleged to have been caused by negligent and wrongful acts of the railroad company. Lyddy, while in the employ of the company as a brakeman, was injured on the evening of October 5, 1907, and died during the night. The train was composed of a locomotive and 17 cars, was in use in the carriage of interstate freight from points in Kentucky to Paris, Tenn., and the injuries and death occurred at Guthrie, Ky. At Russellville of that state two cars were placed and hauled in the train with defective coupling apparatus; the drawhead of each being out and the cars chained together. They were the second and third cars from the caboose. Only one belonged to defendant. The missing drawheads could have been replaced at the shops of defendant at Russellville, and it is not explained why the cars were moved. At Allensville, Ky., seven miles north of Guthrie, the conductor called the attention of the only two brakemen, Lyddy and Brown, to the fact that there was a small leak in the air brake. This was understood to be an order to repair the leak. Lyddy was the head brakeman and Brown the rear brakeman, and their duties touching repairs of air leaks were divided accordingly; that is, the front brakeman repaired leaks occurring in the front portion of the train and the rear

brakeman those happening in the rear portion. These brakemen exchanged places at Guthrie so as to enable Lyddy to take his supper in the caboose after leaving Guthrie, but whether the exchange took place at the telegraph station or the coal chute at that place is of some importance, and is not made clear. The leak seems to have been in the air appliance of one if not both of the defective cars.

At Guthrie at least two stops were made, one at the telegraph station and the other at the coal chute, and these places are about one-half mile apart. The conductor testified that the stop at and about the station was from half an hour to one hour, saying, "We went around to the Henderson Division yard, and did some work there"; but nothing was said about the air leak, nor does it appear whether anything was or was not done toward repairing it, during that stop. On his cross-examination the conductor said:

"Q. When you reached the coal chute your train was intact and ready to proceed? A. As soon as we got coal.

"Q. The stop at the coal chute, was that for any other purpose than to take coal? A. No."

Lyddy received his injuries after the train had reached the coal chute. While the train was standing, with locomotive attached, at the coal chute, the conductor, Raetz, and Lyddy, were in the caboose, and Lyddy, with lantern in hand, left the caboose without saying anything to Raetz. Meanwhile another train coming in the same direction was stopped close to the train in question and a brakeman, named Hesse, came from the second train to the caboose of the first train. While Raetz and Hesse were in the caboose engaged in conversation a few minutes, the train seems to have been moved backward a short distance, perhaps a car's length or a little more. Some one approached the caboose, and cried out that a man was hurt, when Raetz and Hesse went out and found that it was Lyddy. He was lying close to the track with his head to the north. Within a short time Raetz's train started to move out and in spite of his signals it was not stopped; but he overtook it, and left Lyddy with Hesse and several of the crew of the second train. No one saw the accident, and just how Lyddy met his injury can be derived only from circumstantial evidence. At St. Bethlehem and again at Paris the two defective cars were inspected. A small piece of flesh was found on the end of one of them, and the angle cock of the air brake of the second defective car had been turned, which had the effect of cutting off the air from that car.

An instructed verdict for defendant was on motion granted. We are constrained to hold that this ruling must be sustained. Assuming that there was evidence tending to show that a duty rested upon Lyddy to repair the leak and that he so far performed the duty as to turn the angle cock described and incurred fatal injury in so doing, still we are unable to see how a recovery upon the evidence presented could be upheld. True, the movement of the two defective cars was in violation of the Safety Appliance Act. Southern Ry. Co. v. Snyder, 187 Fed. 497, bot., 109 C. C. A. 344 (C. C. A. 6th Cir.). When Lyddy left the caboose with his lantern, the evening

was dark. He gave no notice to the conductor of his purpose to repair the leak, nor does it appear that he gave the engineer or any train employé any notice or signal of such purpose, or that he was intending to go between the defective cars. Lyddy knew the defective condition of the two cars fastened together with chains, and knew the train had been taken to the coal chute for the purpose of coaling. It is not shown that Lyddy knew, or that he did anything to ascertain, whether the coaling had been completed. The contention that his knowledge as front brakeman enabled him to estimate and determine the quantity required or the time needed to finish is not supported by evidence, and is speculative. This is true also of the suggestion that he may have informed the engineer or the other brakeman of his intention to go between the cars. The fact that neither of those employés testified does not relieve the case of the consideration stated. The coaling was done by moving the locomotive, with the train attached, from one coal chute to others until sufficient coal was obtained; and it is shown that it was customary to make these movements without giving warning by bell or whistle. To have gone between the defective cars during the process of coaling, would admittedly have been suicidal. The learned trial judge believed the injury occurred during that period. It can make no difference, however, whether the coaling had been completed or not when Lyddy went between the cars. Nothing was to be done at the coal chute except to take on coal, and the declared purpose of the conductor was to start "as soon as he got coal." What time was there for repairing leaks? It is urged that it was the conductor's duty to signal for the start from the coal chute, and that Lyddy was entitled to rely upon such signal. This is answered, as it seems to us, by the fact that Lyddy must have been injured before the start on the trip was begun. The train was standing when Raetz and Hesse left the caboose. The movement of the train backward had been completed. Upon receiving notice of the injury, they went immediately to Lyddy, and had time to examine him before the train was started on the trip. True, in this case, as in all such cases, it is in vain to try to fix definite periods of time between events; but the events mentioned and their sequence are reasonably certain.

It is not necessary to dwell longer on the facts. Neither the conductor nor the engineer nor any one connected with the train, except only Lyddy, had so far as the record shows any reason to anticipate an attempt on his part to go between the defective cars at the time and in the circumstances shown. For a person to enter a place of such obvious danger, without giving notice or warning, would be quite unnatural, and, despite the presence of the defective cars, to charge the defendant with responsibility for Lyddy's act is to ignore plain and familiar rules of proximate and remote causes; but we do not rest the decision on these rules alone. On the face of the evidence introduced by plaintiff (defendant having offered no evidence), the unfortunate brakeman was clearly open to the charge of contributory negligence and the facts shown permit no other inference. This is aside from any question of assumption of risk,

which, of course, was not under the law a defense to the action; but, as Mr. Justice Day said in Schlemmer v. Buffalo, etc., Ry. Co., 220 U. S. 596, 31 Sup. Ct. 561, 55 L. Ed. 596, respecting the effect of contributory negligence, "notwithstanding the company failed to comply with the statute, the employé was not for that reason absolved from the duty of using ordinary care for his own protection under the circumstances as they existed." See, also, Delk v. St. Louis & San Francisco R. R., 220 U. S. 587, 31 Sup. Ct. 617, 55 L. Ed. 590.

We find no prejudicial error in the other matters pressed by learned counsel, and the judgment must be affirmed, with costs.