SARAH LEE, Administratrix, v. TENNESSEE CENTRAL RAILWAY COMPANY.

Middle Section. December 1, 1928.

Worth Bryant, of Cookeville, and J. A. Drake, of Smithville, for plaintiff in error, Administratrix.

Walter Stokes, of Nashville, and Holladay & Holladay, of Cookeville, for defendant in error, Railroad.

CROWNOVER, J. This action was brought for $10,000 damages by the administratrix of Zeb Lee, for the death of her intestate as a result of a collision with defendant's engine and train. The action was brought under the Federal Employers' Liability Act for the use and benefit of the widow and two minor children of the intestate. The defendant pleaded the general issue.

The action was tried by the court and a jury, and upon motion the court directed a verdict for the defendant. The plaintiff's motion for a new trial was overruled, and she has appealed in error and has assigned only one error, which is, in substance, that the court erred in directing a verdict as there was sufficient evidence of defendant's negligence to carry the case to the jury.

The facts necessary to be stated are that the plaintiff's intestate Zeb Lee and others were employed by the defendant as section man or track laborer, and were engaged in taking up old steel and replacing it with new steel rails on the main line of the defendant's track, near Waldensia, Tennessee, at the time of the accident in which Lee lost his life. About one week or ten days prior to this accident Lee had injured his foot and was given a position of flagman for his section crew, and his special duty at the time was to flag local and through trains, and to give them warning of the danger of the track ahead and to protect the section hands, who were at work on the track of the main line.

On May 24, 1926, the section foreman instructed Lee to go up the track some distance to flag and detain the passenger train until his crew could replace or lay some steel rails that had been taken up. He went up the track, around the curve, with a red flag, to an overhead bridge, where the public road crossed the railroad, and laid down across the track in the shadow of the bridge. The engineer and fireman, on the train consisting of an engine, tender and caboose going east at the rate of 25 or 30 miles an hour, when six or seven car lengths away, saw him lying across the track with his head on the south rail, and the engineer put on the emergency brakes, applied sand, blew the alarm whistle, and says that he did everything possible to stop the train but it ran over Lee and severed his head from his body.

After the train was stopped it was ascertained that the train had carried his body a few feet from the place of the collision and that his head had rolled off into the ditch. His shoes and socks

were found near the place of the collision and he had evidently pulled them off before he laid down on the track. A pistol with two empty shells in the cylinder was also found on the track near the place of the collision.

The track was straight for more than a quarter of a mile beyond the place of the collision and those on the engine on the lookout ahead could or should have seen the deceased on the track for that distance but for the fact that the bridge cast a dark shadow across the track and those upon the lookout ahead could not see him, on account of the glare of the sun, until within six or seven car lengths away, and then they applied the brakes, etc.

It further appears that the deceased had visited his family at his home near Silver Point in Putnam county, Tennessee, and had boarded one of the defendant's trains at midnight before the accident. He had lost sleep during the preceeding night, and had drunk some liquor on that morning, and was probably under the influence of liquor to some extent when he was killed, between two and three o'clock p. m. He had stated at breakfast on the morning before he was killed that this would be the last meal that he would eat in the old car, and sometime before the accident he had gone into and taken from the valise of a fellow section man without his consent, the pistol found near the scene of the collision. As before stated it had two empty shells in the cylinder when picked up, from all of which it was argued he may have committed suicide.

The defendant operated a line of railroad from Hopkinsville in the State of Kentucky to Harriman, Tennessee, and was engaged in hauling interstate freight and passengers before and on the date of the collision.

The substance of the motion for a directed verdict was:

(1) That there was no evidence upon which to predicate a verdict.

(2) There was no evidence that the deceased was killed by the railroad or that the defendant was guilty of any negligence.

(3) The deceased was not engaged in work connected with Interstate commerce, therefore the Federal Employers' Liability Act does not apply.

Upon an examination of the record and the authorities we are of the opinion that the court did not commit error in directing a verdict, because we think that the deceased assumed the risk of the employment.

We think there is nothing in the contention that the deceased might have committed suicide. In the absence of proof the presumption is that his death was not attributable to suicide. See Insurance Co. v. Robertson, 6 Tenn. Apps., 43, 68, 69.

The Federal Employers' Liability Act applies to flagmen, section men and track laborers, who are injured in the course of their employment in repairing the main line of railroads engaged in hauling interstate freight and passengers. See Philadelphia & Reading Railway Co. v. Di Donato, 256 U. S., 327, 65 L. Ed., 955; 1 Roberts Federal Liability of Carriers (1 Ed.), p. 786, sec. 456; p. 830, sec. 479, pp. 902, 903, sec. 519; Railroad v. Davide, 210 Fed., 870; Pedersen v. Delaware L. & W. R. Co., 229 U. S., 146, 57 L. Ed., 1125, and cases cited in the notes 24 N. C. C. A., 71-75.

The proposition that the Tennessee Statutory Precautions apply to employees of a railroad upon the track in the discharge of their duties, can have no applications to actions brought under the Federal Employers' Liability Act, as that statute is exclusive, and the state laws are superseded, hence we are bound by the decisions of the Federal Supreme Court. See 1 Roberts Federal Liability of Carriers (1 Ed.), 721, 726, sec. 421; Howard v. Railroad, 133 Tenn., 19, 179 S. W., 380, L. R. A. 1916B, 794, Ann. Cas. 1917A, 844. But the principle is the same and no recovery can be had because the deceased assumed the risk incident to the employment, and was the sole cause of his own death. 1 Roberts Fed. Liability of Carriers (1 Ed.), 959, sec. 546.

The Federal Employers' Liability Act provides that every common carrier by railroad while engaged in interstate commerce, shall be liable to every employee while engaged by such carrier in such commerce or in case of his death, to certain beneficiaries therein named, for such injury or death, resulting in whole or in part, from the negligence of the carrier, or its employees, or by defects or insufficiencies due to negligence in any of its equipments or property; and that contributory negligence shall not bar recovery, but shall only diminish the damages, except that no employee injured or killed where the violation of the Safety Appliance Law for the employees contributed to the injury shall be held to have been guilty of contributory negligence. See 1 Roberts Federal Liability of Carriers, p. 694, sec. 415. The employee assumes the ordinary risk and hazards of his occupation, and also those defects and risks which are known to him, or are plainly observable, although due to the master's negligence. Contributory negligence, on the other hand, is the omission of the employee to use those precautions for his own safety which ordinary prudence requires. The distinction between assumption of risk and contributory negligence under the Federal Act is important for the reason that, except as to violation of Federal Statutes for the protection of employees, assumption of risk is an absolute defense whereas contributory negligence only reduces the damages. See 1 Roberts Federal

288

Liability of Carriers (1 Ed.), 1006; Schlemmer v. Buffalo R. & P. R. Co., 220 U. S., 590, 55 L. Ed., 596.

We are of the opinion that there can be no recovery in this case because the deceased assumed the risk of injury as a result of negligence if any on the part of the train operators in failing to maintain a lookout for such employees along the track. This applies to section men, track laborers, watchmen and flagmen. See 4 Elliott on Railroads (3 Ed.), pp. 108, 111, sec. 1862; 1 Roberts Federal Liability of Carriers (1 Ed.), pp. 959, 961, sec. 546; Chesapeake & Ohio Railway Co., v. Annie Nixon, 271 U. S., 218, 70 L. Ed., 914; Ellis's Administrator v. Louisville H. & St. L. R. Co., 155 Ky., 745, 160 S. W., 512; O'Neill v. Pittsburgh, etc., R. Co., 130 Fed. 204; N. Y. N. H. & H. R. Co. v. Pontillo, 211 Fed., 331.

It results that the assignment of error must be overruled and the judgment of the lower court affirmed. The cost of the cause, including the cost of the appeal, is adjudged against the plaintiff in error.

Faw, P. J., and DeWitt, J., concur.