Mary Edith DAULTON, Administratrix of the Estate of Donald LeRoy Daulton, deceased, Appellant,

v.

SOUTHERN PACIFIC COMPANY, a corporation, Appellee.

No. 14924.

United States Court of Appeals Ninth Circuit.

Oct. 15, 1956.

See also 228 F.2d 103.

D. W. Brobst, Hildebrand, Bills & McLeod, Oakland, Cal., for appellant.

Koerner, Young, McColloch & Dezendorf, John Gordon Gearin, Joseph Larkin, Portland, Or., for appellee.

Before MATHEWS, BONE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Donald LeRoy Daulton, a Southern Pacific brakeman of the Shasta division of the company, was killed on October 6, 1952, in the course of his employment near the Wocus siding, which is located about three miles from Klamath Falls, Oregon.

In the moments immediately preceding his death he was acting as the "head" or "front end" brakeman on a five car work train. The train was moving northerly on a main line track to get on a siding and out of the way of two freight trains that were scheduled to pass each other at

712

Wocus. As the train moved slowly forward at perhaps four miles an hour Daulton was standing on the right hand footboard (engineer's side).[1] Before entering the siding, the train was to stop for Daulton to manually throw the switch to permit entry into the siding.

Obviously, from the testimony of various trainmen, it would have been better practice for Daulton to have ridden in the cab of the engine, but on the other hand, he may have been riding the footboard to watch for tools possibly left on the track by workers and to warn the workers, as he saw them, about the other trains which would be along soon.

There were no eyewitnesses. No one knows positively what caused Daulton to fall off the footboard and to be dragged between the rails and killed. It is not suggested that it was due to a sudden lurch forward or a quick stop of the engine. As the train moved forward, Daulton was at first visible to the engineer. Then he did not observe Daulton out on the footboard for a distance of "about 40 car lengths" or about 1,400 feet. Being almost at the juncture to the sidetrack, and seeing the switch for the sidetrack receiving no attention and that the block signal near the switch had not changed over, the engineer stopped the train. Now, at this point, all of the train crew knew something was wrong. The testimony indicates the train probably could have been stopped within ten feet. It is not clear whether the engineer lost sight of Daulton because he, the engineer, was primarily watching a signal or because Daulton was no longer on the footboard to be seen, but somewhere under the engine or tender. At least for much of the way, the jury could have found that Daulton could not have been seen on the footboard—because he wasn't there.

Daulton's administratrix on two theories brought her action against Southern Pacific for his death. The first theory

was under the so-called Boiler Act[2] and claimed that the death was due to a protruding bolt on the right hand footboard which had not been countersunk, as good practice would require. In such an event contributory negligence of the decedent would not have been a defense or result in any diminution of damages.

The other claim was under the Federal Employers' Liability Act.[3] This claim asserted negligent operation of the train caused the death. Absence of negligence by the defendant and sole negligence and contributory negligence of the decedent were pleaded by Southern Pacific. During the trial a pre-trial order was completed, setting forth the contentions of the parties. It concluded with defining the issues as follows:

"I.

"Was defendant's engine improper or unsafe in any of the particulars charged and, if so, was such a proximate cause of the death of the deceased?

II.

"Was the defendant guilty of negligence in any particular as charged and, if so, was such a proximate cause of the death of the deceased?

III.

"What is the amount of plaintiff's damage?".

The case was tried to a jury. In view of the usual verdict returned for the plaintiff in cases of this type, it is surprising that the jury in this case did return a verdict for the railroad company. But it did. Now the plaintiff appeals.

The plaintiff-appellant attacks in several ways the instructions given on contributory negligence. In proper time, the instructions on this subject were excepted to by the plaintiff's counsel in words as follows:

"There is only one, your Honor. That was the question of the instruc-

1. In lay parlance, the front end of the engine had sort of a single step in either side of the "cow catcher," called the right hand and left hand footboards. These are for a brakeman to stand on when necessary or convenient for him to do so, particularly in connection with switching.

2. See 45 U.S.C.A. § 22 et seq.

3. See 45 U.S.C.A. § 51 et seq.

tion on contributory negligence. I believe under the circumstances, where the law conclusively presumes that the plaintiff was in the exercise of ordinary care, there being no evidence in the record to the contrary or that he did any act that could be construed as an act of contributory negligence, the instruction should not have been given."

Here both sides were represented by lawyers, experts in the field. It is particularly just[4] to apply Rule 51 of the Federal Rules of Procedure, 28 U.S.C.A. here and to hold that the only objection this court can consider in appellant's group of objections concerning contributory negligence is the one which asserts it was not appropriate to instruct the jury in the field at all because "the law conclusively presumes that the plaintiff was in the exercise of ordinary care, there being no evidence in the record to the contrary or that he did any act that could be construed as an act of contributory negligence."

Southern Pacific answers that the objection is of no moment anyway because a verdict by the jury in its favor necessarily means the company was guilty of no negligence; therefore, it matters not a whit whether any instruction was given on the subject or what the instruction said. That is, to say, in Federal Employers' Liability cases contributory negligence mitigates damages by a certain percentage or fraction. If the defendant caused none of the damage, there is no legal damage. The reduction of nothing by a fraction is nothing. Therefore, error, if any, was harmless. So the argument goes.

■■ However, a better ground to dispose of the point is to say that the objection as made and when made was not a good one. Of course, one starts with the presumption, in the absence of evidence, that everyone was careful. But the presumption is not conclusive.

The rules in these Boiler Act and Federal Employers' Liability cases are extremely liberal. Tennant v. Peoria & Pekin Union R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520. Usually the jury must decide. Here is a string of circumstances, no direct proof. Certainly one cannot say that there is strong proof pointing to any one solution as to how the death occurred. But there are several possible sequences to choose from that might have placed the blame upon the railroad. The jury was entitled to search for what to it seemed most probable as it reconstructed what happened. It could find the engineer on the train, and thus the company, to blame and liable, but it did not have to do so.

Surely the company on contributory negligence is entitled to have the same rules work in its favor. After exploring the testimony for an hypothesis to support plaintiff, and finding none, of course, nothing further was required. But suppose the jury had concluded that the engineer did not cause Daulton to fall off under the train, that Daulton probably did receive serious injuries when he fell off and under (but perhaps not fatal). Further, assume that the jury might find the railroad was negligent in not getting the train stopped, eliminating the distance he was dragged, and thus saving the life of Daulton. Then, this court would see no objection to a jury concluding that it must have been negligent riding by Daulton that got him under the engine in the first place. The jury could then say, for example, the fault was one half Daulton's, and thus reduce the verdict by one half.

The lesson seems to be in Schulz v. Pennsylvania Railroad Co., 350 U.S. 523, 76 S.Ct. 608, that the jury can choose any reasonable hypothesis and that the rule works both ways.

■ There are other assignments of error too. One of the major objections of the appellant is that the court in advance advised counsel that they couldn't predict to the jury what the instructions on the law would be. In common par-

---

4. The objections now made by appellant, but not discussed in this opinion, the court deems to be without merit.

lance, neither side was permitted "to argue the law" to the jury. But the great question here was what caused the accident. And how much were the damages. On a fair consideration of the record, it would not appear that the plaintiff was required to argue in a vacuum. It would appear that the trial court committed no error on this point.

■ On another point claimed as error, the record is against the plaintiff. At the threshold, the attorneys for the plaintiff seem to have made an error. It was an honest one. The right footboard on the engine when examined in the shops after the accident sometime the next day had the head of a bolt sticking up on the surface. It was not countersunk as it should have been. And this condition seems to have continued for months after the accident. Counsel for the administratrix arranged that the bolt extending up above the surface of the board was duly photographed. Upon this discovered condition, which misled them, they projected the claim that a piece of defective equipment caused the accident. If true, and assuming causation, absolute liability under the Boiler Act would have resulted. But although the issue built upon this bolt did go to the jury, the railroad at the trial explained, and it is fair to say rather conclusively, that the morning after the accident the old footboard was removed after railroad representatives photographed it and before the plaintiff had seen it. The board was stored for possible future need as evidence in this, the case one could expect almost surely would be filed. Appellant claims that the circumstances of incidents in the case before trial were such

that they were misled by the Southern Pacific on this footboard and that the company should have told her counsel in advance.

The point in this record might have some merit if it did not also appear that in the opening statement to the jury made by the defendant it was stated that the railroad would show that the footboard was changed immediately after the accident and that nothing was wrong with the board at the time the accident happened. Plaintiff made no request for a continuance at the time and did not complain. Under the particular circumstances here, all that plaintiff might have been entitled to was time. For this, no request was made. Complaint cannot be made now.

■ Finally, appellant says the court made prejudicial remarks to the jury concerning the testimony of a witness named Zimmerman when he gave his expert opinion as to the time required to stop the work train going at the slow speed which all admitted. It is a close question whether the comment should or should not have been made at the time it was. But by the end of the case several witnesses were asked their opinions as to the distance required to stop the train. All fixed a very short distance. None suggested over fifteen feet.[5] Had the issue remained hotly contested as to the distance required to stop, then the comment might have to be seriously considered. But when the case was submitted to the jury, the comment had become of no consequence anyway.

Plaintiff had a fair trial.

Affirmed.

5. Zimmerman said "within a few feet, almost immediately." Others said (1) with-

in 10 to 15 feet (2) in between four to six feet (3) six to eight feet.