Jay G. MUMMA

v.

READING COMPANY.

Civ. A. No. 29681.

United States District Court
E. D. Pennsylvania.

Nov. 9, 1965.

Meyer, Lasch, Hankin & Poul, by Joseph Smukler, Philadelphia, Pa., for plaintiff.

Frederick H. Knight, 3rd, Philadelphia, Pa., Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel, for defendant.

JOSEPH S. LORD, III, District Judge.

Plaintiff brought this suit under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) to recover on two causes of action for two injuries he received, allegedly due to defendant's negligence, during the course of his employment on January 28, 1961 and January 4, 1964.[1] The jury returned its verdict finding plaintiff guilty of contributory negligence to the extent to 45% and awarding $4,400 net damages for each accident.

Before us now is plaintiff's timely motion under F.R.Civ.P. 59(e) to modify the judgment on the grounds that there was no evidence of contributory negligence; that that issue was improperly submitted to the jury; and that, therefore, the finding of 45% contributory negligence in each cause of action should be eliminated and the verdicts restored to their full amount of $8,000 without a 45% reduction.

---

1. A third cause of action for an earlier accident, Civil Action No. 28953, was tried at the same time, but does not now concern us.

The accident of January 28, 1961 happened while plaintiff was inspecting engines which were being fueled by a fellow employe when he slipped and fell because of fuel oil and ice on the walkway. The fuel oil came from a fuel hose which when disconnected from the engine was not drained into a pan or taken to a post to be hung up, but instead was laid over the water line. Previous complaints concerning this fueling procedure had been made to the foreman and at safety meetings. Ice from a previously melted snowfall covered the walkway and nothing was put down to correct or alleviate this condition.

In the accident of January 4, 1964 plaintiff was walking on the regular path from the inspection pit to the enginehouse. His rubbers had become soaked with fuel oil caused by the fueler flooding the walkway by permitting fuel oil to overflow. The path was unshoveled from a snowfall which occurred several days previous to the accident and the snow had melted and frozen into ice. Because of the icy path and rubbers soaked with fuel oil plaintiff slipped, fell and was injured.

■■ In actions under the F.E.L.A. the burden of proving contributory negligence is, of course, on the defendant. Central Vermont Railway Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433 (1915); Moore, Admr. v. Atchison, Topeka & Santa Fe Railway Company, 28 Ill.App.2d 340, 171 N.E.2d 393, 97 A.L.R. 2d 511 (1960). And in these cases, the sufficiency of the evidence to take the issue of contributory negligence to the jury is to be tested by the same standards that are used to test the sufficiency of plaintiff's evidence on the issues of negligence and proximate cause. Cf. Ganotis v. N. Y. Central Railroad Co., 342 F.2d 767 (C.A.6, 1965); Daulton, Admx. v. Southern Pacific Company, 237 F.2d 710 (C.A.9, 1956). Tested by these standards, there was sufficient evidence, although it was extremely meager, to permit a finding of contributory negligence in the accident of January 4, 1964. Plaintiff testified that he was wearing rubber overshoes which had been soaked with fuel oil. The testimony was:

"Q You said you had some rubber overshoes on; is that right?

"A I had regular work rubbers on.

"Q Did they fit over your work boot?

"A Over top of my work shoes.

"Q But you didn't take those off before you fell; is that right?

"A I didn't take them off at all. You see, when you walk around that fuel oil it soaks up in your rubbers and it is just like walking on glass.

"Q But if you had taken off your rubbers you wouldn't have had the fuel oil on when you were walking back, would you?

"A If I would have took my rubbers off I would have catched a cold taking the rubbers off.

Another thing, I would have slipped anyhow, probably, because my shoe soles were old and they would have slipped anyhow on the ice."

■ Thus, as to the second accident, there is at least some suggestion in the evidence that the plaintiff might have taken some additional precautions for his own safety. While the percentage of blame attached to plaintiff by the jury seems out of all proportion, that determination was nonetheless for the jury.

■ As to the accident of January 28, 1961, however, the situation is entirely different. The record is utterly barren even of a suggestion that the plaintiff could have acted otherwise than he did, short of stopping work entirely. Defendant's only argument is that plaintiff had worked at the engine pits for 13 years and that he was aware of and had complained about the presence of spilled oil. Defendant seems to argue that plaintiff's continued presence at the spot in the face of the known dangerous condition was evidence of contributory negligence. It is not. If anything, it is voluntary assumption of risk,—a defense that was completely removed from the Federal Employers' Liability Act by

the 1939 Amendment. 53 Stat. 1404, c. 685, 45 U.S.C.A. § 54; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943).

The distinction between contributory negligence and assumption of risk is a shadowy one. See Prosser, Law of Torts, (3d ed., 1964), pages 451–452; James, Assumption of Risk, 61 Yale L.J. 141 (1952); Tiller v. Atlantic Coast Line R. Co., supra, 318 U.S. at page 63, 63 S.Ct. 444. However, it is necessary to make this distinction because the one is a partial defense and the other is no defense at all. Koshorek v. Pennsylvania Railroad Company, 318 F.2d 364, 367 (C.A.3, 1963). Prior to 1939 the situation was different. Contributory negligence still operated merely to reduce damages, but assumption of risk was a complete defense. Thus, it is necessary to turn to the pre-1939 decisions to determine what it was that Congress intended to abolish.

In Schlemmer v. Buffalo, R. & P. R. Co., 205 U.S. 1, 27 S.Ct. 407, 51 L.Ed. 681 (1907), the Court had before it the first invasion of the defense of assumption of risk. The Act of March 2, 1893 (27 Stat. at L., Chap. 196) required the use of automatic couplers. Section 8 of that Act provided that any employe injured by any car in use contrary to the provisions of the Act shall not be deemed to have assumed the risk thereby created. Plaintiff's decedent was killed when he was compelled to go between cars not equipped with automatic couplers. The lower court nonsuited plaintiff on the ground of contributory negligence. The Pennsylvania Supreme Court affirmed. In reversing, Mr. Justice Holmes said, speaking of assumption of risk, at pp. 12–13, 27 S.Ct. at p. 409:

"* * * It [assumption of risk] is extended, as in this statute it plainly is extended, to dangerous conditions, as of machinery, premises, and the like, which the injured party understood and appreciated when he submitted his person to them. In this class of cases the risk is said to be assumed because a person who freely and voluntarily encounters it has only himself to thank if harm comes, on a general principle of our law. Probably the modification of this general principle by some judicial decisions and by statutes like § 8 is due to an opinion that men who work with their hands have not always the freedom and equality of position assumed by the doctrine of *laissez faire* to exist.

"Assumption of risk in this broad sense obviously shades into negligence as commonly understood. Negligence consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of, under the circumstances known to the actor, that he is held answerable for that result, although it was not certain, intended, or foreseen. He is held to assume the risk upon the same ground. * * * But the difference between the two is one of degree rather than of kind; and when a statute exonerates a servant from the former, if at the same time it leaves the defense of contributory negligence still open to the master (a matter upon which we express no opinion), then, unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of the risk under another name. * * * *"

When that case again reached the Supreme Court, Schlemmer v. Buffalo, R. & P. R. Co., 220 U.S. 590, 595–596, 31 S.Ct. 561, 563, 55 L.Ed. 596 (1911), the Court said:

"* * * While, as was said in the case when here before, assumption of risk sometimes shades into negligence as commonly understood, there is, nevertheless, a practical and clear distinction between the two. In the absence of statute taking away the defense, or such obvious dangers that no ordinarily prudent person would incur them, an employee is held to assume the

risk of the ordinary dangers of the occupation into which he is about to enter, and also those risks and dangers which are known, or are so plainly observable that the employee may be presumed to know of them, and if he continues in the master's employ without objection, he takes upon himself the risk of injury from such defects. Choctaw, O. & G. R. v. McDade [191 U.S. 64, 67, 68, 48 L.Ed. 96, 100, 101, 24 Sup.Ct.Rep. 24], and former cases in this court therein cited.

"Contributory negligence on the other hand, is the omission of the employee to use those precautions for his own safety which ordinary prudence requires. * * *"

In Gila Valley, G. & N. R. Co. v. Hall, 232 U.S. 94, 101–102, 34 S.Ct. 229, 231, 58 L.Ed. 521 (1914), the Court said:

" * * * An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it. * * *"

In Seaboard A. L. R. Co. v. Horton, 233 U.S. 492, at pp. 503–504, 34 S.Ct. 635, at pp. 639–640, 58 L.Ed. 1062 (1914), the Court again distinguished between assumption of risk and contributory negligence:

"* * * The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employee; and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. * * * But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court. * * *"

■■ It is true, as pointed out by Mr. Justice Black in Tiller, that at common law there were many facets to the doctrine of assumption of risk, including non-negligence, the fellow-servant rule, the simple tool doctrine, and a confusion with or overlapping of assumption of risk and the defense of contributory negligence. It is the last with which we are here concerned, and in that context a rather clear formulation emerges. *Under ordinary circumstances*, the knowledgeable acceptance by an employe of a dangerous condition when such acceptance is necessary for the performance of

his duties is assumption of risk. Contributory negligence, on the other hand, implies a careless act or omission on the part of the servant superimposed upon the mere necessary acceptance of known conditions negligently created or permitted to exist by the employer. In Bohlen, Contributory Negligence, 21 Harv.L.R. 233, 249 (1908), it is said:

" * * * Voluntary assumption of risk is the mere passive subjection by the plaintiff of himself to the risk of injury inherent in known defective conditions. Contributory negligence is an act or omission on the plaintiff's part tending to a reasonable probability to add new dangers to his situation, not necessarily incident to the known defective conditions, and bringing upon himself a harm not caused solely by them, but created in part at least by his own misconduct. * * *"

This is not to say that *under extraordinary circumstances* the acceptance of the risk may not in itself be so unreasonable that no prudent man would expose himself to it. Thus, in Bohlen, Voluntary Assumption of Risk, 20 Harv. L.R. 14, 17 and 18, it is said:

" * * * The defense of contributory negligence is quite distinct. Negligence involves the idea of misconduct, a failure to measure up to the standard of that ideal personage the normal social man; assumption of risk does not. A risk while obvious may not be so imminently dangerous that a prudent man would necessarily avoid it, yet if it shall be freely encountered it will in general be held to be so far assumed that no recovery for consequent injury is possible. Voluntary conscious action may be negligent if the known danger be great and imminent, but it is not negligent because voluntary. * * * It is essential that the two ideas should be kept quite distinct. For just as there may be voluntary subjection without negligence, there may be negligence though the subjection is not voluntary. In such case the danger may be so great and imminent that no prudent man may face it, even to assert his legal rights or perform his legal or social duties, —no man of course being allowed to insist on his extreme rights in the face of certain injury. * * *"

Cf. Restatement, Torts, (2d), Tentative Draft No. 9, § 496A, Comments (c) (4) and (d). In the latter comment it is stated:

"The same conduct on the part of the plaintiff may thus amount to both assumption of risk and contributory negligence, and may subject him to both defenses. His conduct in accepting the risk may be unreasonable, and so negligent, because the danger is out of all proportion to the interest he is seeking to advance. * * *"

However, we are not faced here with that situation. The determination of whether contributory negligence exists or does not exist depends upon whether the danger is out of all proportion to the interest sought to be advanced. As in the case of negligence, there are situations in which this determination must be declared as a matter of law. Cf. Herdman v. Pennsylvania Railroad Company, 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508 (1957); Inman v. Baltimore & Ohio Railroad Company, 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959); New York, New Haven & Hartford Railroad Company v. Henagan, 364 U.S. 441, 81 S.Ct. 198, 5 L.Ed.2d 183 (1960). Here, the interest which plaintiff was seeking to advance was his economic security. He was doing nothing more than what his duties called upon him to do. To avoid the risk he would have been compelled to quit his job and this the law does not demand. Here, plaintiff must be declared free of contributory negligence as a matter of law because the risk of harm itself was not so imminent, nor was the likelihood of injury so great that, in view of the interest plaintiff sought to advance, no prudent man would face it.

What others have said in relation to assumption of risk is analogous here. Thus, in Thrussell v. Handyside, 20 Q. B.D. 359 (1888), Hawkins, J., said, at page 364:

" * * * It cannot be said, where a man is lawfully engaged in work, and is in danger of dismissal if he leaves his work, that he wilfully incurs any risk which he may encounter in the course of such work, and here the plaintiff had asked the defendant's men to take care. It is different where there is no duty to be performed, and a man takes his chance of the danger, for there he voluntarily encounters the risk. If the plaintiff could have gone away from the dangerous place without incurring the risk of losing his means of livelihood, the case might have been different; but he was obliged to be there; his poverty, not his will, consented to incur the danger. * * * "

That reasoning, while spoken in the context of assumption of risk is equally applicable to considerations of contributory negligence. Thus, in Bohlen, Contributory Negligence, 21 Harv.L.R. 233 (1908), the author states, at page 250:

" * * * It is practically impossible to conceive of a danger not so imminently dangerous 'that no sensible man would encounter it,' which cannot be avoided by the exercise of some conceivable precaution on the part of the plaintiff, a workman who in the course of his duty is called upon to deal with the defective tool or appliance, or to come to the place where the dangerous condition exists. Where the legislature has intended to protect such workmen from their own inability to resist the pressure of their economic necessity by providing that certain precautions shall be taken for their safety, which through their inferiority they are unable to insist upon for themselves,

to hold, that unless they take such impossible precautions as this, they are to be regarded as guilty of contributory negligence and so barred from recovery, would destroy the protection in that most usual and important class of cases where the workman is injured while himself using the defective tool or appliance, or by coming to the place where the defective condition exists. * * * "

We think that plaintiff's conduct here, which consisted only of doing his normal work despite a potentially dangerous situation arising from defendant's negligence, was nothing more than classic assumption of risk, that is, mere " * * voluntary exposure to an obvious or known danger which negates liability. * * * "[2] Pritchard v. Liggett & Myers Tobacco Company, 350 F.2d 479 (1965). To hold otherwise would be to thwart the purpose of the 1939 Amendment, and would permit the doctrine of assumption of risk to throw aside its Congressionally given shroud and walk the earth again in the clothing of contributory negligence. Cf. Pritchard v. Liggett & Myers Tobacco Company, supra, at page 485. This the obvious Congressional intent will not permit.

The conclusion we have reached finds sound judicial support. In Smith v. United States, 336 F.2d 165, 168 (C.A.4, 1964), Judge Sobeloff said:

" * * * Further, the fact that 'the libellant knew of the condition of the recessed indentures' does not justify a finding of contributory negligence against him, for such a finding here is tantamount to holding that Smith assumed the risk of the defective ladder. * * * He may not be charged 'with assumption of the risk under another name.' * * * Clearly, to say that Smith was at fault for using the ladder when he knew of its deficiency does not differ in substance from

---

2. It does not, of course, negate liability in F.E.L.A. cases.

invoking the doctrine of assumption of risk against him.

"Had an alternative, safe route been available to Smith, his deliberate choice of a course known to be unsafe could possibly have indicated contributory fault, but mere knowledge of the unseaworthy condition and use of the ladder in the absence of a showing that there was an alternative is not contributory negligence. * * *"

Similarly, in Mason v. Mathiasen Tanker Industries, Incorporated, 298 F. 2d 28 (C.A.4, 1962), plaintiff was an oiler. His evidence showed that the blower bearings leaked oil and that there was, during a great part of every day, excessive oil on the blower platform deck and that plaintiff was compelled to wade through this oil in the performance of his regular duties. Plaintiff claimed that his shoes became oil-soaked and this caused him to slip on a ladder. The court held that the issue of contributory negligence was erroneously submitted to the jury. The court said, 298 F.2d at page 32:

"  *   *   * No witness testified that plaintiff failed to grasp the handrail which was provided for anyone using the ladder, or that he failed, in any respect, to take proper precaution to insure his own safety. Juries cannot be permitted to speculate on what might or could have happened without supporting evidence. * * *'"

■ So here, we hold that there was no evidence from which a jury could properly find plaintiff guilty of contributory negligence in the accident of January 28, 1961. Koshorek v. Pennsylvania Railroad Company, 318 F.2d 364 (C.A.3, 1963), does not stand in the way of our conclusion. There, plaintiff's claim was that there was a silica hazard in the shop where he worked. The court held that the jury should have been charged, not only on contributory negligence, but also on assumption of risk and the fact that the latter was no de-

fense. The evidence showed that respirators were available, but that plaintiff had never asked for one. As we read Koshorek, this failure on plaintiff's part could be considered contributory negligence, whereas his continued working in the presence of the silica hazard was assumption of risk. So regarded, our holding is in complete harmony with Koshorek.

■ Defendant contends that, in any event, plaintiff is now foreclosed from the remedy he seeks because of his alleged failure to comply with F.R.Civ.P. 51. True, plaintiff took no exception to the charge. However, plaintiff's Point for Charge No. 20 read as follows:

"I charge you that, from all the evidence in this case, it does not appear that the plaintiff was contributorily negligent and, therefore, if you find the plaintiff is entitled to recover, you should award him the total damage as I shall define it."

This was sufficient to call plaintiff's position to the attention of the trial judge [Green v. Reading Co., 183 F.2d 716 (C.A.3, 1950)] and "reiterative insistence" was not required. Moreau v. Pennsylvania R. R. Co., 166 F.2d 543, 545 (C.A.3, 1948). The substantive spirit of F.R.Civ.P. 51 was adequately satisfied.

■ Defendant argues that were we to amend the judgment under F.R.Civ.P. 59(e) it would be tantamount to changing the factual findings of the jury. We do not agree. The jury's finding here was explicitly clear. It found the defendant negligent to the extent of 55% and the plaintiff contributorily negligent to the extent of 45%. The court had charged on diminution of damages as follows:

"Under this law contributory negligence of a plaintiff is not a complete bar to recovery. If you find that there was any contributory negligence, that contributory negligence would merely reduce the plaintiff's damages by whatever percentage

the plaintiff's negligence bore to the entire fault of the accident.

"Thus to use again a ridiculous example, if the plaintiff was damaged totally to the extent of $10 and the plaintiff was 90 per cent negligent, he would recover $1. If on the other hand he was only 10 per cent negligent he would recover $9. The mere fact that I have used these figures is no indication whatsoever. that I believe the plaintiff was guilty of any contributory negligence, or if he was, in what amount. This again I leave for you."

The verdict was as follows:

"*THE CLERK*: In the second accident do you find for the plaintiff or defendant?

"*THE FOREMAN*: In the second accident the jury unanimously has agreed that the defendant Reading Company was 55 per cent contributorily negligent and we award loss of revenue of $2,750, pain and suffering, $1,650, or a total of $4,400 for the plaintiff.

"*THE CLERK*: In the third accident do you find for the plaintiff or the defendant?

"*THE FOREMAN*: In the third accident the jury unanimously agrees 55 per cent contributory negligence by the defendant Reading Company and we award a loss of revenue of $2,750, pain and suffering, $1,650, or a total of $4,400 for the plaintiff.

"*THE CLERK*: Shall I record the verdict?

"*THE COURT*: Yes, you may record the verdict.

"*THE CLERK*: Members of the jury, hearken unto your verdict as the Court hath recorded it.

"In this issue joined wherein Jay G. Mumma is plaintiff and Reading Company is defendant, Civil Action No. 28953 and 29681, in the first action you find for the plaintiff in the sum of $160.

"In the second action you find for the plaintiff in the sum of $4,-400.

"In the third accident you find for the plaintiff in the sum of $4,-400.

"And so say you all.

"*SEVERAL JURORS*: We do.

"*THE CLERK*: Thank you.

"*MR. SMUKLER*: Your Honor, conceivably could we have the jury polled on the issue of—I don't understand the question of contributory negligence. They seemed to say contributory negligence of the railroad and I don't know whether that is clear or not.

"*THE COURT*: Well, perhaps I can clarify that.

"Mr. Foreman, when I charged the jury this morning on contributory negligence I used that term in reference to the plaintiff; that is, any negligence on the part of the plaintiff which contributed to the accident.

"In speaking of the responsibility of the defendant I used the word negligence without the preferatory word contributory.

"You have used contributory negligence as applied to the defendant.

"*THE FOREMAN*: Well, we could take the opposite of the percentages that were so named and say that the plaintiff in the first accident was 98 per cent contributory; in the second, 45; and in the third, 45."

It is a matter of inescapable arithmetic that the jury found plaintiff damaged in the total amount of $8,000 and reduced this amount in its verdict by 45%,—a reduction that we have now concluded was based on no evidence. We are not here called upon to find different facts from the evidence, but merely to correct the judgment by striking out that portion which was erroneous because it lacked both legal and factual justification. Rule 59(e) is designed for precisely such situations. Cf.

Rodgers v. Conemaugh & Black Lick Railroad Company, 137 F.Supp. 467 (W. D.Pa., 1956).

## ORDER

And now, November 9, 1965 it is ordered as follows:

1. Plaintiff's motion to amend the judgment under Rule 59(e) is granted as to the first count in plaintiff's amended complaint, and judgment is entered in favor of the plaintiff in the amount of $8,000.00.

2. Plaintiff's motion to amend the judgment under Rule 59(e) is denied as to the second count of plaintiff's amended complaint.